EL PUEBLO DE PUERTO RICO en interés de los menores R.P.S., M.P.S. y C.J.N.S.

*Número:* CE-91-664          *Resuelto:* 22 de julio de 1993

*Abimael Hernández Martínez* y *Heriberto Quiñones Echevarría*, de la *Clínica de Asistencia Legal de la Universidad Interamericana de Puerto Rico*, abogados de los peticionarios; *Anabelle Rodríguez, Procuradora General*, y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La controversia ante nuestra consideración encierra cuestiones de alto interés público, por razón de su relación directa con el bienestar de quienes, en muchas ocasiones, resultan ser las "víctimas indefensas y silenciosas de la violencia": los niños.[1] Debemos resolver si el Estado está obligado a demostrar —en los casos bajo la Ley de Protección a Menores— que ha realizado los esfuerzos razonables previo a la privación de la custodia a los padres biológicos, con el fin de preservar la integridad familiar y, en los casos en que la remoción del menor tuviera lugar, demostrar que posteriormente ha realizado dichos esfuerzos con el fin de que el niño regrese lo más pronto posible al hogar de sus padres.

I

El 6 de junio de 1991 el Departamento de Servicios Sociales presentó ante el Tribunal de Distrito, Sala de San

---

[1] Véase Exposición de Motivos de la Ley Núm. 75 de 28 de mayo de 1980, Leyes de Puerto Rico 194.

Juan, una petición jurada de Elizabeth González, trabajadora social de ese Departamento. En la petición mencionada, la trabajadora social declaró que los recurrentes Michelle Shrivers Otero y Cruz Nieves López —padres de los menores R.P.S., M.P.S. y C.N.S.— "aceptan estar en uso de heroína intravenosa. El área donde residen es un punto de venta y distribución de drogas. La familia vive en condiciones infrahumanas. [Los] menores [están] en alto riesgo de sufrir daño físico y emocional". Declaración jurada, pág. 1.

Vista la petición jurada de la trabajadora social, el Tribunal de Distrito dispuso que los menores fueran puestos inmediatamente bajo la custodia provisional del Departamento de Servicios Sociales. Los tres (3) niños fueron ubicados posteriormente en hogares sustitutos de personas ajenas a la familia de los recurrentes.

El 25 de junio de 1991 se celebró una vista ante el Tribunal Superior, Asuntos de Menores, Sala de San Juan, a tenor con las disposiciones de la Ley de Protección a Menores, 8 L.P.R.A. sec. 401 *et seq.*, a la cual comparecieron los padres representados por abogado. Durante la celebración de dicha vista, los recurrentes presentaron verbalmente una moción al tribunal por medio de la cual solicitaba que se hiciera una determinación preliminar sobre si el Departamento de Servicios Sociales llevó a cabo los esfuerzos razonables, antes de a la remoción de los menores de su hogar, para evitar ésta. Según los recurrentes, dicha determinación debía realizarse a tenor con la legislación federal conocida como *Adoption Assistance and Child Welfare Act of 1980*, P.L. 96–272 de 17 de junio de 1980 (42 U.S.C. 620–628, 670–676 (1991)). Los recurrentes, además, llamaron la atención del tribunal a posibles incidentes de maltrato a los menores en el hogar donde se encontraban. El 9 de septiembre de 1991 el tribunal declaró sin lugar la solicitud mencionada de los padres.[2] Inconformes con esa resolución, acuden ante nos los señores Shrivers Otero y

---

[2] En lo pertinente, la resolución del juez establece:

Nieves López apuntando la comisión de tres (3) errores por parte del Tribunal de Primera Instancia.[3]

El 22 de noviembre de 1991 concedimos término a la Procuradora General de Puerto Rico con el fin de que mostrara causa por la cual no debíamos dejar sin efecto la resolución recurrida y ordenar al tribunal de instancia que "determine si el Departamento de Servicios Sociales ha realizado esfuerzos razonables para evitar la remoción de los menores del hogar de sus padres biológicos, los recurrentes, y si, en caso afirmativo, el plan propuesto en este caso por el Departamento ... incluye la realización de esfuerzos razonables para la rehabilitación del mencionado hogar y el restablecimiento de las relaciones entre dichos menores y sus padres biológicos a los fines de que aquellos puedan regresar al hogar de éstos a la mayor brevedad posible, todo ello a tenor con las disposiciones de la Ley Federal de Salud y Bienestar Público". (Énfasis omitido.) Resolución de 22 de noviembre de 1991.

En su escrito para mostrar causa la Procuradora General acepta que la ley federal referida es parte de nuestro ordenamiento jurídico. Sin embargo, aduce que el tribunal de instancia "no privó a los peticionarios de ningún derecho en es[t]a etapa de los procedimientos ni dispuso nada

---

"Aplica al caso de autos la Ley 75 de 28 de mayo de 1980, según enmendada. En Puerto Rico la materia contenida en la ley federal 96–272, "Adoption Assistance and Child Welfare Act of 1980", 'no ha ocupado el campo' y desplazado el poder estatal. Este Tribunal no ha recibido mandato alguno de la Administración de los Tribunales, ni del Tribunal Supremo, a los efectos de que por acuerdos entre el gobierno estatal y federal es imperativo aplicar la ley federal de referencia.

"El "Adoption Assistance and Child Welfare Act of 1980", Ley 96–272, no es parte del ordenamiento legal que rige en Puerto Rico. Este Tribunal no es el foro adecuado para imponer la misma. En Puerto Rico, según expresado anteriormente, rige la Ley 75 de 28 de mayo de 1980, según enmendada, y el caso de autos fue iniciado y ha evolucionado bajo el mandato y las disposiciones de esta Ley."

[3] Los errores planteados son los siguientes:

"Erró el Tribunal de Instancia al resolver que la ley conocida como 'Adoption Assistance and Child Welfare Act' de 1980, '...no es parte del ordenamiento legal que rige en Puerto Rico'.

"Erró el Tribunal de Instancia al resolver que 'este Tribunal no es el foro adecuado para imponer la misma.

"Erró el Tribunal de Instancia al resolver que la Ley Número 75 de 28 de mayo de 1980 es de aplicación exclusiva a los hechos de este caso." *Certiorari*, pág. 4.

contrario a derecho" al negarse a llevar a cabo la determinación sobre los esfuerzos razonables, por lo que procedería confirmar la resolución del tribunal. Escrito para mostrar causa, pág. 11. Alega la Procuradora que no es necesario realizar este esfuerzo en casos de privación de custodia de emergencia y, en cuanto a la determinación posterior a la privación de custodia, plantea que "los hechos del presente caso claramente evidencian que el Departamento de Servicios Sociales identificó los problemas más apremiantes de la familia y esbozó un plan de servicios para atenderlos de inmediato".

▮ Salvado el escollo sobre la aplicabilidad en Puerto Rico del estatuto federal mencionado,[4] procede concentrarse en resolver si es necesaria, en todo caso de privación de custodia bajo la Ley Núm. 75, *supra*, la determinación específica del tribunal a los efectos de que el Estado, a través de su Departamento de Servicios Sociales, realizó los esfuerzos razonables para evitar la remoción del menor del hogar de sus padres biológicos o si realizó dichos esfuerzos con posterioridad a la remoción para propiciar el regreso del menor a su hogar.

## II

*Adoption Assistance and Child Welfare Act*

### A. *Propósito congresional y contenido de la medida*

Previo a la aprobación del *Adoption Assistance and Child Welfare Act of 1980,* los esfuerzos del Congreso de Estados Unidos, al propiciar la asignación de fondos a los

---

[4] La ley expresamente incluye a Puerto Rico, Islas Vírgenes y Guam entre los beneficiarios de los fondos provistos por el Congreso. Véase 42 U.S.C. sec. 671a8 (1991).

De hecho, en su comparecencia, la Procuradora expresa que "Puerto Rico recibe aproximadamente $4.0 millones por concepto de esta ley".

estados con el fin de mantener los hogares sustitutos para los menores removidos del hogar de sus padres biológicos, estaban inspirados en la filosofía de que estos hogares sustitutos representaban la mejor alternativa para los niños que eran víctimas de algún tipo de maltrato. Sin embargo, esta situación cambió drásticamente como resultado de los estudios realizados en torno a las acciones tomadas por las agencias estatales concernidas que intervenían en casos de abuso y negligencia hacia menores. Los estudios demostraron que sólo un número insignificante de los niños removidos del hogar de sus padres eran integrados nuevamente a su familia biológica. Se detectaron, en la mayoría de los casos, ciertas deficiencias en la coordinación de los programas dirigidos a rehabilitar los lazos familiares. Se comprobó que muchos de los niños ubicados en hogares sustitutos (*foster homes*) eran trasladados de uno a otro hogar con el triste resultado de causar un daño irreparable al menor, al éste no poder contar con la estabilidad tan necesaria en su proceso de formación. Véanse, a tales efectos: A. Norman, *Keeping Families Together: The Case for Family Preservation* (Manual preparado por "Edna McConell Clark Foundation", bajo los auspicios del "Program for Children", publicado en 1985); K. English, *A View From the Bench: The Judge's Role in Promoting Effective Planning For Families and Children,* 1991, National Council of Juvenile and Family Court Judges.

■ El esquema de la legislación federal aprobada en 1980 se fundamenta, pues, en el principio de la integridad familiar. La meta de mantener esta integridad ha sido identificada como el principio rector de la ley federal bajo la filosofía de que el mejor lugar donde un niño puede estar es en el hogar de sus padres biológicos y bajo el cuidado de éstos. *Making Reasonable Efforts: Steps for Keeping Families Together,* National Council of Juvenile and Family Court Judges; Child Welfare League of America; Youth

Law Center; National Center for Youth Law (sin fecha de publicación).

Conforme al esquema mencionado, el estatuto establece un programa de reembolso de ciertos gastos en los cuales incurre un estado en la administración de los servicios de custodia sustituta *(foster care)* y de adopción de menores. Así, la ley provee para que se le reembolse al Estado un porciento de los pagos que haya hecho para la prestación de los servicios, cuando el Estado cumple con los requisitos del estatuto.

■ Para participar en el programa, los estados deben someter un plan al Secretario de Salud y Servicios Humanos de Estados Unidos para ser aprobado por éste. 42 U.S.C. secs. 670–671 (1991). Para que el plan pueda ser aprobado por el Secretario, éste tiene que incluir una serie de aspectos o cualificaciones que están enumerados en la sec. 671, *supra.* En su parte pertinente a esta controversia, dicha sección dispone:

> (a)Requisite features of State plan
> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which-
>
> . . . . . . . .
>
> (3)provides that the plan shall be in effect in all political subdivisions of the State, and, if administered by them be mandatory upon them;
>
> . . . . . . .
>
> (15)effective October 1, 1983, provides that, in each case, *reasonable efforts will be made* (A) prior to the placement of a child in foster care, *to prevent or eliminate the need for removal* of the child from his home and (B) *to make it possible for the child to return to his home....* (Énfasis suplido.) 42 U.S .C. sec. 671a3, (15) (1991).

B.  *Alcance de la medida*

El 25 de marzo de 1992 el Tribunal Supremo de Estados Unidos se expresó sobre el alcance de esta disposición. En

el caso de *Suter v. Artist M.*, 503 U.S. 347 (1992),[5] varios niños beneficiarios bajo la ley federal presentaron un pleito de clase contra el Departamento de Servicios a la Familia del estado de Illinois alegando que dicho departamento no realizó los esfuerzos razonables para evitar que fueran removidos de sus hogares y con el fin de promover su regreso a éstos. Los pronunciamientos de mayor importancia del Tribunal Supremo federal son los siguientes:

> In the present case, however, the term "reasonable efforts" to maintain an abused or neglected child in his home, or return the child to this home from foster care, appears in quite a different context. No further statutory guidance is found as to how reasonable efforts are to be measured. This directive is not the only one which Congress has given to the States, and it is a directive whose meaning will obviously vary with the circumstances of each individual case. How the State was to comply with this directive, and with the other provisions of the Act, was within broad limits, left up to the State. *Suter v. Artist M.*, supra, pág. 14.

■     De esta forma, el Tribunal Supremo federal reconoce que el concepto de los *esfuerzos razonables* contenido en la sec. 671 de la ley federal, *supra*, aunque sea mandatorio en el sentido de que este aspecto debe estar cubierto por el plan que se someta a la consideración del Secretario *no lo es* respecto a la forma en que los estados implementan el mismo. Se le reconoce, pues, una gran discreción a los estados en la implementación del plan, incluyendo la aprobación de su propia legislación en la cual se establezca y defina el concepto de los *esfuerzos razonables*. El Tribunal Supremo federal concluye:

> Careful examination of the language relied upon by respondents, in the context of the entire Act, leads us to conclude that the "reasonable efforts" language does not unambiguously confer an enforceable right upon the Act's beneficiaries. The term "reasonable efforts" in this context is at least as plausibly read to impose only a rather generalized duty on the State, to be

---

[5] 60 LW 4251.

enforced not by private individuals, but by the Secretary in the manners previously discussed. *Suter v. Artist M.*, supra, págs. 15–16.

Analizaremos más adelante si la decisión discutida afecta en algo al reclamo de los recurrentes en este caso.

### III

*Ley de Protección a Menores, Ley Núm. 75 de 28 de mayo de 1980*

■ La Ley de Protección a Menores fue aprobada el 28 de mayo de 1980. En su exposición de motivos se establece la responsabilidad que debe asumir el Estado ante circunstancias de maltrato o negligencia. Expresa, en lo pertinente:

> Ante esta situación, el Estado Libre Asociado de Puerto Rico, en el ejercicio de su poder de "Parens Patriae" reconoce su responsabilidad de velar por aquellos niños que son víctimas de maltrato o negligencia para evitar que éstos continúen sufriendo daño, una vez que se sospeche o conozca que son víctimas de las personas que tienen el deber sagrado de velar por ellos; *de proveerles los servicios y la ayuda necesaria para fortalecer la familia de donde éstos provienen haciendo del hogar uno seguro para los niños y cuando esto no sea posible, ofrecerles cuidado fuera del hogar en un ambiente saludable, ya sea en forma provisional o permanente, dependiendo de las circunstancias de cada caso.* (Énfasis suplido.) 1980 Leyes de Puerto Rico 194–195.

■ De manera similar al estatuto federal, dentro del esquema legislativo puertorriqueño podemos identificar la política de velar por la integridad familiar, imponiendo al Estado la responsabilidad de proveer servicios conducentes a fortalecer los lazos familiares. Sólo en los casos en que la preservación de dicha integridad no sea posible, *luego de haberse provisto los servicios adecuados*, se justificará la remoción del menor del hogar de su familia biológica. De igual forma, el Art. 3 de la Ley Núm. 75, *supra*, 8 L.P.R.A.

sec. 403, al declarar la política pública del Estado Libre Asociado establece, en lo pertinente:

Forma parte de esta política pública *el reconocimiento de la autonomía paterna en la crianza de los hijos ... ya que el hogar es el medio por excelencia para lograr el óptimo desarrollo de un niño.* (Énfasis suplido.)

El Art. 5 de nuestra ley, 8 L.P.R.A. sec. 405, faculta al Departamento de Servicios Sociales de Puerto Rico "para adoptar las reglas, normas, reglamentos, establecer los programas de servicios y estructuras, así como establecer los procedimientos que sean necesarios para hacer realidad la política enunciada en la sec. 403 de este título". Por consiguiente, este organismo tendrá la responsabilidad de coordinar los programas dirigidos a preservar la unidad de la familia puertorriqueña y a fomentar el óptimo desarrollo del niño, que se alcanzará de mejor forma cuando éste permanece en el hogar de sus padres biológicos.

A pesar del hecho de que nuestra Ley para la Protección a Menores fue aprobada aproximadamente un (1) mes antes de la aprobación del *Adoption Assistance and Child Welfare Act of 1980,* y de que sus disposiciones no han sido objeto de enmiendas desde el 28 de mayo de 1980 hasta el presente, dichas disposiciones armonizan perfectamente con los principios enunciados en la ley federal, según enmendada en 1983. Específicamente, el Art. 30 de la Ley Núm. 75, *supra,* 8 L.P.R.A. sec. 430, enumera una serie de alternativas para ser consideradas por nuestros tribunales una vez hecha la determinación de si un menor es o ha sido objeto de maltrato o negligencia. Por ser dichas alternativas muy relevantes a la solución de esta controversia, citamos:

El tribunal, una vez hecha la determinación de maltrato o negligencia, resolverá a base de los mejores intereses y bienestar del menor y podrá tomar, sin que se entienda como una limitación, una o más de las siguientes determinaciones:

(a)Mantener al menor en su hogar natural con la supervisión protectora del Departamento y *bajo las condiciones* que el tribunal estime convenientes por un lapso de tiempo que, inicialmente, no será mayor de seis (6) meses, prorrogables hasta un período máximo de un (1) año.

(b)Mantener a la persona o personas bajo *supervisión protectora* sujetas a presentarse al tribunal en cualquier momento durante el período de *supervisión protectora* en caso que ocurra un daño al menor o exista riesgo substancial de daño al menor.

(c)Privar a los padres o a la persona responsable del menor de la custodia en forma provisional, por un lapso de tiempo que inicialmente no será mayor de seis (6) meses, prorrogable hasta un término máximo de dos (2) años, *señalándole a los padres y al Departamento las medidas que deberán tomarse para que el menor pueda regresar a su hogar en el plazo más breve posible*, o podrá tomar las providencias que sean necesarias para una determinación final sobre la custodia del menor.

(d)Otorgar la custodia legal del menor al Departamento. En todo caso de protección en que el Tribunal conceda la custodia legal del menor al Departamento, éste estará facultado para autorizar cualquier tratamiento médico y/o intervención quirúrgica que el menor necesite. Así como para autorizar la realización de cualquier acto que sea para beneficio del menor como, por ejemplo, conceder permiso para que éste salga de Puerto Rico de vacaciones o permiso para participar en actividades deportivas y recreativas. En estos casos y antes de dar su autorización, el Departamento hará *gestiones razonables* para conseguir a los padres o tutores a los fines de que éstos autoricen el tratamiento o la actividad de que se trate, a menos que por circunstancias especiales, la demora en conseguir a los padres resulte en detrimento del menor. Cuando la custodia legal le fuere otorgada al Departamento, la custodia de facto podrá recaer en la persona que el Departamento a tales efectos designe. El custodio de facto tendrá, respecto del menor de que se trate, los siguientes derechos y obligaciones:

(1)Mantener la custodia física del menor.

(2)Proteger, educar y disciplinar al menor.

(3)Proveer alimento, ropa, albergue, educación académica, recreación y el cuidado médico rutinario requerido por el menor.

(4)Autorizar cualquier tratamiento médico de emergencia, incluyendo cualquier intervención quirúrgica que no admita la demora que conlleva el conseguir la correspondiente autorización de los padres o del Secretario del Departamento.

(e)Otorgar la custodia del menor a un familiar o a otra persona que el tribunal estime conveniente.

(f)Tomar cualquier otra decisión que a su entender sirva a los mejores intereses y bienestar del menor.

Cuando la determinación del tribunal sea mantener al menor en su hogar natural bajo la supervisión protectora del Departamento, o que provisionalmente se prive a los padres de la custodia, deberá señalar una vista en un período de tiempo no mayor de seis (6) meses contados desde la fecha en que haya emitido su determinación. En dicha vista *el tribunal evaluará* si las partes han cumplido con las condiciones que les hubieren sido impuestas al dejar al menor bajo la supervisión protectora del Departamento. El tribunal podrá, luego de la vista dispuesta en el párrafo anterior, tomar la determinación que considere conveniente, de acuerdo a lo dispuesto en los incisos de la (a) a la (f) de esta sección.

No obstante lo establecido en esta sección, el tribunal podrá discrecionalmente celebrar en cualquier momento una vista cuando las circunstancias del caso así lo requieran. (Énfasis suplido.) Art. 30 de la Ley Núm. 75, *supra.*

De forma consistente en los principios antes citados, el Departamento de Servicios Sociales ha adoptado un Manual de Normas y Procedimientos con el propósito de establecer las directrices que provean el servicio de hogares sustitutos para menores como parte del Programa de Servicios a Familias con Niños de dicha agencia. El Manual expresa claramente la filosofía de la agencia en casos como el presente:

Un hogar adecuado es el mejor sitio para el crecimiento integral y el completo desarrollo de un niño.

Como postulado de esta filosofía se exige en cada caso la preparación de un *plan de permanencia*, cuyo fin es que todo niño removido de su hogar biológico retorne a sus padres con la mayor brevedad. Establece el manual mencionado:

Una permanencia prolongada en un hogar de crianza sin propósito, sin intención, crea un futuro incierto para el niño. Es por lo tanto necesario que al remover al niño de su hogar biológico iniciemos *las gestiones encaminadas a preparar un plan de permanencia para este niño que le permita retornar a la mayor brevedad con su familia o, de no ser esto posible, prepararle*

*otro plan de permanencia alterno.* Al prepararle un plan de permanencia para un niño, lo que hacemos es esclarecer la intención y el objetivo de la colocación e indicar la duración de la misma. *Es seleccionar aquel plan más adecuado para un niño de acuerdo con la situación particular de su familia biológica en un momento dado y con sus necesidades individuales.* (Énfasis suplido.)

Como vemos, el principio rector que regula el *Adoption Assistance and Child Welfare Act of 1980* para mantener la integridad familiar en los casos de menores es el mismo que inspira a nuestro propio estatuto. El concepto de *esfuerzos razonables* contenido en dicho estatuto federal también permea nuestro estatuto y se le da forma específica en este Manual de Normas y Procedimientos. Prevalece a través de toda la reglamentación recogida en el manual, la filosofía en cuanto a que el plan de permanencia ideal para todo niño removido de su hogar biológico es el retorno a sus padres. *Hidalgo v. Depto. Servicios Sociales*, 129 D.P.R. 605 (1991). No tenemos, pues, que recurrir al estatuto federal como fuente de derecho para adoptar las medidas que pretende la parte recurrente.

## IV

*Esfuerzos razonables*

De acuerdo con la política pública que impulsó nuestra legislación, resolvemos que *bajo la Ley de Protección de Menores, supra,* y tomando en cuenta lo dispuesto en el Manual de Normas y Procedimientos para el Servicio de Hogares Sustitutos para Menores, el Departamento de Servicios Sociales deberá demostrar en cada caso de privación de custodia *que ha realizado los esfuerzos razonables* con anterioridad a la remoción del menor de su hogar para preservar la unidad familiar. De igual forma, si fuera necesaria la remoción del niño, deberá demostrar que se encuentra realizando los esfuerzos razonables con el fin de

hacer posible el pronto regreso del menor al hogar de sus padres biológicos.

■ A tenor con lo resuelto anteriormente, el tribunal deberá hacer una *determinación específica* al efecto de que se haya cumplido con tales requisitos en la sentencia o resolución dictada al amparo del Art. 30 antes citado. En ausencia de las directrices estatutarias específicas, el tribunal determinará caso a caso *qué esfuerzos resultaron ser razonables* para alcanzar el propósito mencionado en las circunstancias particulares. El Manual de Normas y Procedimientos será de gran ayuda al juzgador para que éste determine si en cada caso se ha seguido el procedimiento adecuado.

> To determine whether reasonable efforts have been made in a specific case, the court must be aware of services that could have been appropriately provided to the family and are readily available in the community. In addition, to determine whether children in its jurisdiction are adequately served by the local child welfare agency, the court must be aware of the service the community provides and those it lacks. *Making Reasonable Efforts: Steps for Keeping Families Together, supra*, pág. 48.

■ En aquellos casos en los cuales el Departamento de Servicios Sociales solicite la custodia de emergencia para la protección de un menor al amparo del Art. 31 de la Ley de Protección a Menores, *supra*, 8 L.P.R.A. sec. 431, el Departamento deberá establecer las razones que aconsejan la remoción del menor en la forma dispuesta en el artículo mencionado. En tal caso, el juez deberá consignar en su orden las razones que justifican esa remoción *y cuando la urgencia del caso así lo requiera, no tendrá que hacer determinación alguna sobre los esfuerzos razonables*. No obstante, en la vista a ser celebrada con posterioridad a la determinación de la custodia de emergencia y en cumplimiento de lo dispuesto por el Art. 32 de dicha ley, *supra*, 8 L.P.R.A. sec. 432, así como en vistas subsiguientes, el tribunal deberá hacer esta determinación con el fin de cercio-

rarse de que se estén llevando a cabo los esfuerzos razonables para que el menor regrese al lado de sus padres lo más pronto posible. Como hemos dicho, y contrario a lo aducido por la Procuradora en su escrito, no basta con la mera alegación de la agencia en cuanto a que está cumpliendo con el requisito; *ésta deberá probarlo al tribunal de forma fehaciente.*

En un intento de proveer unas guías a los jueces para determinar si los esfuerzos realizados han sido o no razonables, varias jurisdicciones han reconocido ciertos factores para ser considerados por el tribunal al hacer dicha determinación, tanto antes como después de la remoción del menor de su hogar biológico. En algunos estados, por ejemplo, se toman en consideración los siguientes:

(1)Naturaleza del problema, *e.g.*, tipo o grado de violencia, severidad, duración, familiares relacionados;

(2)naturaleza de los servicios ofrecidos o provistos, *e.g.*, tipo de agencias concernientes, número de contactos con la familia, esfuerzos para crear una relación terapéutica con la familia o tratar de que otras personas lo hagan;

(3)naturaleza de los servicios considerados y rechazados por la agencia;

(4)relación entre los servicios ofrecidos o provistos y el problema existente, *e.g.*, si son o no apropiados, accesibilidad, duración de servicios, nivel y calidad de la relación de los miembros de la familia;

(5)perspectiva de la familia sobre sus necesidades de servicios y respuestas a éstos;

(6)selección de la agencia o servicio a la cual referir a la familia para satisfacer sus necesidades, *e.g.*, servicios intensivos dentro del hogar, consejería en época de crisis;

(7)diligencia de la agencia al hacer tales servicios disponibles o aceptables a la familia, *e.g.*, dar seguimiento a los acuerdos con la familia o con las órdenes del tribunal, número de contactos por escrito o personales;

(8)gestiones anteriores hechas por la familia para obtener servicios o intervención y los resultados de tales intentos;

(9)intentos anteriores hechos por la agencia para intervenir o proveer servicios, incluyendo los referidos a otros profesionales y los resultados obtenidos (la expectativa es que la agencia persevere y no asuma que el cliente habrá de rechazar o continuar rechazando los servicios);

(10)nivel de servicios requeridos para mantener al niño en su hogar biológico o devolverlo a dicho hogar y la razonabilidad de proveer dichos servicios;

(11)razones por las cuales otros servicios o esfuerzos para mantener al niño en su hogar no fueron prácticos o adecuados, *e.g.*, situación de emergencia, no cooperación de la familia;

(12)personas responsables de tomar la decisión de remover al niño de su hogar biológico, incluyendo los requisitos de la agencia para manejar el caso, y

(13)reconsideración de la decisión de remover al niño por el personal de la agencia, *e.g.*, número de veces que se revisó el caso, documentación de la revisión formal o decisión.

Los factores que generalmente se toman en cuenta para hacer la determinación sobre los esfuerzos razonables con el fin de reunir al niño con su familia son:

(1)Plan de reunificación establecido inmediatamente luego de la remoción;

(2)servicios provistos a la familia con posterioridad a la remoción, incluyendo el esfuerzo de profesionales con experiencia trabajando con problemas familiares específicos, *e.g.*, alcoholismo, drogadicción, impedimentos físicos y/o mentales, etc;

(3)plan de visitas establecido inmediatamente después de la remoción, incluyendo el hecho de que éste sea apropiado, posibles modificaciones hechas para acomodar los

horarios en que la familia esté disponible, ansiedades del niño, el no obstruir el derecho de visitas, y

(4)intentos de reunir al niño con su familia, incluyendo servicios de apoyo a proveerse para hacer que la reunificación sea exitosa. Véase *Reasonable Efforts to Prevent Foster Placement; A. Guide to Implementation*, supra.

Las jurisdicciones estatales norteamericanas, en su gran mayoría, reconocen el deber de las agencias de bienestar social de llevar a cabo los esfuerzos razonables para evitar la remoción del menor del hogar de sus padres y, cuando no ha podido evitarse, con posterioridad a ésta con el fin de reunir a la familia. En el mismo contexto, muchos estados han reconocido, casi como una presunción, que los niños siempre estarán en mejor condición al lado de sus padres biológicos. Véanse, a tales efectos: *In re A.C.*, 597 A.2d 920 (1991); *State In Interest of J.*, 582 So. 2d 269 (1991); *In re D.G.*, 583 A.2d 160 (1990); *In Interest of T.R.*, 460 N.W.2d 873 (1990); *In Interest of Feidler*, 573 A.2d 587 (1990).

Resulta de primordial importancia señalar que el rol del juez es crucial en estos casos. Los tribunales deben requerir al estado evidencia que sostenga claramente que se han llevado a cabo los *esfuerzos razonables* y no deberán aceptar meras alegaciones y conclusiones de que se realizaron. Una determinación del juez a los efectos de que "los esfuerzos realizados por la agencia fueron suficientes" no es apropiada. Se requiere que el juez tenga ante sí evidencia suficiente que sostenga determinaciones de hechos específicos sobre los servicios prestados y su adaptación a cada caso individual. *A View From the Bench. The Judge's Role in Promoting Effective Planning for families and children*, supra.

*VI*

*Situaciones de emergencia*

Sin embargo, queda un punto por aclarar con respecto a la determinación que debe hacerse sobre la realización y razonabilidad de tales esfuerzos en los casos *de emergencia*. La convivencia social nos ha demostrado que existen distintos cuadros de maltrato a menores que van desde la mera negligencia y descuido, hasta el maltrato físico o mental severo. Debemos reconocer que en ciertas ocasiones no puede llevarse a cabo esfuerzo alguno por parte de la agencia para evitar la remoción del menor cuando la situación en el hogar presente un riesgo sustancial e inminente para su salud física o emocional. En tales circunstancias, nuestro estatuto provee para la custodia de emergencia en protección de dicho menor al amparo del Art. 31 de la Ley de Protección a Menores, *supra*. Sin embargo, el Departamento deberá establecer las razones que aconsejan la remoción del menor en la forma dispuesta en este artículo. En tal caso, el juez deberá consignar en su orden las razones que justifiquen la remoción y cuando la urgencia del caso así lo requiera, *no tendrá que hacer determinación alguna sobre los esfuerzos razonables*. No obstante, en la vista exigida con posterioridad a la remoción por el Art. 32 de la Ley de Protección a Menores, *supra*, así como en vistas subsiguientes, el tribunal deberá hacer una determinación sobre los esfuerzos razonables que se estén llevando a cabo para que el menor regrese al lado de sus padres lo más pronto posible. Como hemos dicho, y contrario a lo aducido por la Procuradora en su escrito, no basta con la mera alegación de la Agencia en cuanto a que está cumpliendo con el requisito; *ésta deberá probarlo al tribunal de forma fehaciente*.

Esta decisión es guiada exclusivamente por lo que entendemos es el mayor bienestar para los más afectados en este proceso: *los niños*. Nos parece adecuada la expresión

de la profesora Maya Angelou en la introducción del manual *Keeping Families Together: The Case for Family Preservation, supra*:

> When any child, vulnerable as the season's first snowflake, is handed into a strange atmosphere, even into a rare, sensitive and caring environment, the question which afflicts the newcomer is always, "If I wasn't good enough for my own family, which they say is no good, how can I be accepted here, before strangers?" "Tragically, the question is unanswerable and perseveres under the skin, in the viscera through the days, hours and years into adulthood".

Los hechos probados en este caso nos convencen de que el tribunal de instancia estuvo justificado al ordenar la remoción inmediata de los menores del hogar de sus padres, sin exigir la prueba demostrativa de los esfuerzos razonables para evitar dicha remoción, debido a que existía un riesgo inminente a la salud mental y física de estos niños en ese momento. La situación que señalan los hechos en este caso es precisamente de emergencia y constituye una excepción a dicha exigencia.

En vista de ello, *se dictará sentencia confirmando la resolución del tribunal de instancia que ordena la remoción inmediata de los menores y se devolverá éste al tribunal de instancia para la continuación de los procedimientos en forma compatible con esta opinión.*

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri concurrieron con el resultado sin opinión escrita. Los Jueces Asociados Señores Negrón García y Rebollo López no intervinieron.