TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso, la parte apelante, Silvia Crespo Valle, nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 18 de febrero del 2000, debidamente notificada a las partes el 3 de marzo del mismo año. En dicho dictamen, el foro de instancia ordenó privar a la señora Silvia Crespo Valle, parte aquí apelante, de la custodia de su hijo, el menor S.J.S.C., concediéndole la custodia legal de éste al Departamento de la Familia, y la custodia física a la señora Geralda Sánchez. No conforme con el anterior dictamen, recurre ante nos la parte apelante solicitándonos revoquemos el mismo, y ordenemos le sea entregada la custodia legal y física de su hijo, el menor S.J.S.C. Evaluada la prueba que tuvo ante su consideración el tribunal de instancia, nada nos inclina a variar la determinación a la que llegó dicho foro hermano.
La cabal comprensión de las controversias presentadas nos exigen, primero, realizar un breve recuento fáctico y procesal de los asuntos que dieron origen al recurso instado.
*821 I. HECHOS
Según las determinaciones de hechos que realizara el foro de instancia, el menor SJ.S.C. nació el 2 de noviembre de 1994. Cuando tenía poco más de dos (2) años, dicho menor fue removido de su hogar materno, amparada la remoción en las disposiciones de la Ley Núm. 75 el 26 de abril de 1997. Al momento de la remoción del menor, la madre de éste, la señora Silvia Crespo Valle, tenía diecinueve (19) años y vivía en casa de su abuela materna, la señora Alejandrina Valle Velázquez. En dicho hogar también vivían tres (3) hermanos de la apelante, de las siguientes edades, quince (15), diecisiete (17) y veintitrés (23) años. El hogar era recipiente de los servicios del entonces Departamento de Servicios Sociales, hoy Departamento de la Familia (el Departamento, en adelante), desde el año de 1987.
Además del menor SJ.S.C., la parte apelante era madre de otra hija. El padre de esta última había presentado, anterior a los hechos de este caso, una acción contra la apelante, en la cual, como parte de los acuerdos alcanzados por las partes, estipularon que la apelante y los dos menores se fueran a vivir a la casa de la señora Geralda Sánchez en Guaynabo. La. apelante, junto a una hermana, había vivido anteriormente en dicho hogar, desde que tenía diez (10) años, hasta los trece (13) años de edad.
La apelante abandonó el hogar de la señora Sánchez y regresó al hogar de la abuela, la señora Valle. Hecho lo anterior, la apelante le solicitó al padre de la hija, hermana del menor SJ.S.C., que asumiera la custodia de ésta, a lo que el padre accedió. Fue entonces que el Departamento procedió a remover al menor SJ.S.C. del hogar de su madre, puesto que en dicho hogar no había acomodo para madre e hijo, y tampoco había alimentos. A lo anterior se añade que la apelante dejaba el menor al cuidado de la abuela, sin supervisar las necesidades físicas y médicas de éste.
Efectuada la remoción del menor, la trabajadora social asignada al caso estableció un plan de servicios para la apelante en el que se incluyó lo siguiente: recibir servicios de C.E.D.E.; evaluaciones sicológicas; servicios en Proyecto Amanecer y reuniones familiares. La apelante no cumplió con el plan de servicios que le fue diseñado. Se indica que la apelante mostraba actitud de indiferencia para con las orientaciones, y aunque fue orientada en el sentido de que siguiera estudiando, y fue gestionado su ingreso a Job Corps, ésta optó por trabajar.
Tomando en consideración información que relacionaba a la apelante con personas de dudosa reputación, entre éstos usuarios de drogas, fue referida a C.E.D.E. Allí acudió a una evaluación, el 2 de diciembre de 1997, y quedó citada para el 23 de diciembre del mismo año. La apelante no asistió a la cita concertada, por lo cual su caso fue cerrado.
La apelante tampoco se pudo beneficiar del servicio de la escuela para padres. No pudo asistir a dicha escuela, en primer término, porque trabajaba en una fábrica y se le hacía imposible asistir. Sin embargo, tampoco asistió a la escuela de padres, aun cuando la trabajadora social le gestionó la misma, nuevamente, estando la apelante desempleada.
Las relaciones matemo-filiales se daban en casa de la madre. En un momento dado, hubo cambios positivos en la conducta de la apelante que le valieron el que se aumentaran las relaciones matemo-filiales, y que se permitiera que el menor pernoctara en dicha casa. Sin embargo, en algunas de estas reuniones, la madre no tenía alimentos para el menor, los cuales tenía que comprar el mismo día. La apelante apenas cocinaba para el menor. En algunas ocasiones, la trabajadora social no pudo supervisar estas reuniones por el hecho de que la apelante se mudaba y no informaba dónde se encontraba viviendo. La comunicación entre la apelante y la trabajadora social era muy pobre, la primera apenas visitaba la oficina de la trabajadora social.
El menor fue descrito como bien activo y agresivo. La madre de crianza del menor, Geralda Sánchez, indicó que cuando éste regresaba de las reuniones filiales con su madre, se notaba más agresivo que de costumbre. A *822 lo anterior se añade que el menor fue referido al Proyecto Amanecer porque se notó cierta conducta sexualizada. No se encontró evidencia de abuso sexual, pero sí que en el hogar se le estaba dando un modelo inadecuado.
La propia apelante aceptó que el menor era bien cuidado por la madre de crianza, la señora Geralda Sánchez, y que no quería que se lo quitaran a ninguna de las dos. Finalmente, la apelante solicitó unos meses más hasta que recibiera la permanencia en su trabajo, pero que si no la recibía, entonces que el menor se quedara con la madre de crianza.
El 18 de febrero del 2000, el tribunal de instancia emitió la sentencia de la cual se recurre, en la que determinó que, a pesar del plan de servicios que implemento el Departamento a favor de la apelante, ésta no demostró estar capacitada o dispuesta a asumir la custodia del menor.
Inconforme con dicho dictamen, la parte apelante recurre ante nos mediante recurso de apelación y nos plantea los siguientes errores:

“1- Erró el Tribunal de Primera Instancia al privar a la apelante de la custodia del menor S.J.S.C., pues en este caso, el Estado no realizó esfuerzos razonables para reunificar al menor S.J.S.C. y a su madre, la apelante.

2- Erró el Tribunal de Primera Instancia al resolver que la apelante no cumplió con el plan de servicios que requiere la ley. ”

El 6 de noviembre del 2000, la Procuradora Especial de Relaciones de Menores, por conducto de la Oficina del Procurador General, nos presentó alegato en oposición a escrito de apelación. Teniendo el beneficio de los escritos de las partes, nos encontramos en posición de resolver las controversias presentadas.
II. EXPOSICION Y ANALISIS
El procedimiento de privación de custodia ante el tribunal de instancia fue conducido según las disposiciones de la Ley Núm. 75 de 28 de mayo de 1980, según enmendada, 8 L.P.R.A. see. 401 et seq., también conocida como la Ley de Protección de Menores. En la Exposición de Motivos de dicha ley se expresa que su finalidad es: "lograr la protección de los niños que son víctimas del maltrato o negligencia; por tanto, la actividad del funcionario, profesional o magistrado que intervenga en estos casos, será, antes que nada, de protección a los menores".
A tenor con esta ley, se redactó el Reglamento Núm. 4 de la Ley de Protección de Menores. En su Sección III, relativa a la política a seguirse, este Reglamento expresa que el hogar biológico es el lugar ideal para el desarrollo efectivo del niño. Además, afirma que si hay que decidir entre los intereses de la familia biológica y la protección del menor, la prioridad será para la protección del menor, recurriendo al tribunal de ser necesario.
El foro de última instancia, en Pueblo en interés de los menores R.P.S., M.P.S. y C.J.N.S., 134 D.P.R. 123 (1993), expresó que tanto en el ámbito federal, como en el estatal, la filosofía que permea a través de la legislación relativa a la protección de menores, ha sido que el mejor lugar donde puede estar un niño es en el hogar de sus padres biológicos y bajo el cuidado de éstos. Dentro del ámbito del derecho puertorriqueño, la política pública ha sido velar por la integridad familiar. Como consecuencia de dicha filosofía, "un padre tiene el derecho de relacionarse o visitar a un hijo que está en un hogar de crianza. Sólo cuando el plan de visitas envuelva riesgos para el menor, se podrá limitar o prohibir el mismo". Hidalgo v. Dpto. de Servicios Sociales, 129 D.P.R. 605 (1991). Y ha sido reconocido que en Puerto Rico, como en la mayoría de las jurisdicciones norteamericanas, existe casi como una presunción de que los menores estarán mejor al lado de sus padres biológicos. Pueblo en interés de los menores R.P.S., M.P.S. y C.J.N.S., supra.
De acuerdo con la política pública declarada en el citado caso de Pueblo en interés de los menores R.P.S., *823 M.P.S. y C.J.N.S., supra; "el Departamento de Servicios Sociales deberá demostrar en cada caso de privación de custodia que ha realizado los esfuerzos razonables con anterioridad a la remoción del menor de su hogar para preservar la unidad familiar. De igual forma, si fuera necesaria la remoción del niño, deberá demostrar que se encuentra realizando los esfuerzos razonables con elfin de hacer posible el pronto regreso del menor al hogar de sus padres biológicos".
Dicho lo anterior, sin embargo, en el normativo Pérez Suárez v. Departamento de la Familia, opinión del 17 de febrero de 1999, 99 J.T.S. 15, nuestro Tribunal Supremo expresó que a partir de la aprobación de la Ley Núm. 8 dé 19 de enero de 1995, la cual enmendó la Ley Núm. 75, supra, la Asamblea Legislativa ha reenfocado la política pública del Estado en cuanto al bienestar de los niños maltratados. Concluye dicho alto foro que la actual política pública del Estado es, en lo pertinente: "establecer, fuera de toda duda, que su interés preeminente es la protección y bienestar del menor, y que, aun cuando el Estado tiene un deber de proveer servicios sociales de diverso tipo, para prevenir la remoción de los menores de sus hogares y de prestar servicios efectivos de rehabilitación a los padres, nunca pueden ser utilizados estos legítimos propósitos, por ninguna agencia del Estado Libre Asociado de Puerto Rico, para poner en riesgo de maltrato, abandono o exponer a experiencias nocivas a su desarrollo físico, mental, emocional o moral a ningún menor." 8 L.P.R.A. see. 403.
Citando el Informe del P. de la C. 1607, que luego se convirtió en la Ley Núm. 8, supra, se estableció que: "LA NUEVA POLITICA PUBLICA QUE SE ESTABLECE CON ESTA MEDIDA... ES QUE EL BIENESTAR DEL MENOR CONSTITUYE EL INTERES APREMIANTE PREDOMINANTE DEL ESTADO, Y CUALQUIER DUDA O CONTROVERSIA DEBE RESOLVERSE A FAVOR DEL MENOR, y las conveniencias administrativas, ni la necesidad de obtener fondos federales por parte del Estado pueden prevalecer sobre este principio". Pérez Suárez v. Departamento de la Familia, supra. Fue el propósito del legislador asegurarse de que el interés primordial por el que siempre se debe velar, es el del menor, por su salud, bienestar y seguridad. Suárez v. Departamento de la Familia, supra.
Concluyó el Tribunal Supremo destacando que el cambio ocurrido en la política pública del Estado en cuanto a la protección a los menores, se debió principalmente a situaciones donde el Departamento de la Familia anteponía la recuperación y rehabilitación de los hogares biológicos a la protección y bienestar de los menores; esto debido a una interpretación errónea de la ley y de la jurisprudencia relacionada por parte de los funcionarios y empleados públicos encargados de implantar la Ley Núm. 75, supra. Id.
En el caso de autos, ambos errores señalados por la parte apelante aluden a una misma alegación, cual es, que el Estado no realizó esfuerzos razonables posterior a la remoción del menor, para reunificar la familia compuesta por el apelante y su hijo. No estamos de acuerdo.
En primer término, el tribunal de instancia atendió expresamente en el juicio seguido, y en la sentencia emitida, la alegación sobre los esfuerzos que hiciera el Estado en el caso de autos para tratar de reunificar el menor con su madre biológica. Concluyó dicho foro, luego de evaluada la prueba, que había quedado demostrado que tales esfuerzos sí fueron hechos.
A lo anterior se añade que, conforme a la exposición narrativa estipulada de la prueba, las partes tuvieron amplia oportunidad de interrogar a los testigos sobre las medidas dirigidas a reunificar a la apelante con su hijo. Así, de este modo, la técnica social, Ada Rodríguez, declaró que la apelante no cumplió con el plan de servicios que se le preparara, el cual consistió en asistir a la escuela de padres, orientaciones y evaluaciones sicológicas, asistir a A.S.S.M.C.A., entre otras. La apelante tuvo amplia oportunidad de contrainterrogar a la señora Ada Rodríguez sobre ese asunto, y así lo hizo. Sin embargo, el tribunal de instancia le concedió credibilidad al testimonio de dicha técnica, dirigido éste a demostrar que a la apelante sí se le ofrecieron servicios para que lograra la reunificación con su hijo, pero no fueron debidamente aprovechados.
*824 Por último, nos parece del todo punto fundamental, el testimonio de la propia parte apelante en el sentido de que necesitaba tiempo en lo que se establecía bien, conseguía una casa cerca del trabajo, le daban la permanencia, y que, en fin, si no le daban dicha permanencia, le dejaría el niño a doña Gerarda porque no quería que pasara necesidades. El cuadro descrito, como resulta evidente, sólo nos impulsa a juzgar la decision del tribunal de instancia como una de gran mesura. Bajo dichas circunstancias, entendemos no se puede argumentar con seriedad que el bienestar del menor estará mejor servido en el hogar de la apelante.
En este punto es necesario aludir a la doctrina que restringe a los foros apelativos de intervenir con las determinaciones de hechos y adjudicaciones de credibilidad realizadas por el Tribunal de Primera Instancia, en ausencia de prejuicio, pasión, parcialidad o error manifiesto. Belk Arce v. Martínez, opinión del 36 de junio de 1998, 98 J.T.S. 92; López Vicil v. I.T.T. Intermedia, Inc., opinión del 4 de abril del 1997, 97 J.T.S. 42; Quiñones López v. Manzano Pozas, opinión del 26 de junio de 1996, 96 J.T.S. 95. Los foros apelativos no podemos descartar las determinaciones de hechos del foro sentenciador y sustituirlas por nuestras propias apreciaciones basadas en un examen del expediente del caso. Rolón García v. Charlie Car Rental Inc., opinión del 2 de junio del 1999, 99 J.T.S. 89. Después de todo, fue el tribunal de instancia quien oyó y vio declarar a los testigos y apreció su comportamiento ("deamenor"), por lo que está en mejor posición para aquilatar la prueba testifical desfilada. López Vicil v. I.T.T. Intermedia, Inc., supra.
En cualquier caso, y a la luz de la nueva postura o enfoque respecto a los casos bajo la Ley Núm. 75, supra, nada hay en el expediente que nos incline a pensar que el mejor interés del menor está, al menos en estos momentos, al lado de la apelante. Se ha de recordar que en estos casos priva el bienestar del menor en las decisiones sobre custodia, y entendemos que no incidió el foro de instancia al determinar que el bienestar del menor estará mejor resguardado según lo dispuesto.
ni
Por los fundamentos antes expuestos, y no habiéndose cometido los errores señalados, confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2001 DTA 49
1. Exposición narrativa de la prueba estipulada, contrainterrogatorio a Sylvia Crespo, págs. 13 y 14.