ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **YERIEL M. MARRERO ROLÓN**<br><br>Apelante<br><br>v.<br><br>**PATRICIA VÁZQUEZ CINTRÓN**<br><br>Apelada | KLAN202301044 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.: **AR2023RF00102**<br><br>Sobre: Custodia-Monoparental o compartida |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Cruz Hiraldo y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2024.

Comparece ante nos el señor Yeriel Moisés Marrero Rolón (señor Marrero Rolón o apelante) y nos solicita revocar una *Sentencia* emitida el 3 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI).[1] En virtud del aludido dictamen, el TPI archivó la petición de custodia monoparental sobre la menor de edad que el señor Marrero Rolón procreó con la señora Patricia Vázquez Cintrón (señora Vázquez Cintrón o apelada) por falta de jurisdicción al determinar que el apelante podía presentar una solicitud de intervención en el caso promovido por el Departamento de la Familia.

Por los fundamentos que esbozamos a continuación, confirmamos la *Sentencia* apelada.

Veamos los antecedentes fácticos y procesales que sostienen nuestra determinación.

---

[1] Apéndice de *Apelación*, Anejo 1, págs. 1-3. Archivada y notificada en autos el 5 de octubre de 2023. El 20 de octubre de 2023, el señor Marrero Rolón solicitó *Reconsideración*, pero el TPI se declaró No Ha Lugar mediante una *Resolución* emitida el 20 de octubre de 2023, notificada el 24 de octubre de 2023.

-I-

El caso de autos dimanó el 14 de febrero de 2023, cuando el señor Marrero Rolón presentó una *Moción sobre custodia, relaciones filiales o patria potestad* contra la señora Vázquez Cintrón.[2] Adujo que, durante el embarazo, la apelada utilizó cannabis, validado por unas pruebas de dopaje realizadas a la madre y a la menor al momento del alumbramiento. Alegó que esta circunstancia le provocó problemas respiratorios a la menor, requiriendo prolongar su estancia hospitalaria. A su vez, estableció que, desde el 24 de enero del 2023, fecha en que su hija egresó del hospital, el Departamento de la Familia le concedió su custodia provisional. Además, sostuvo que, a raíz de los resultados de las pruebas de dopaje, la señora Vázquez Cintrón le envió un mensaje con ideas suicidas, por lo que fue recluida a un hospital psiquiátrico. Esgrimió que la señora Vázquez Cintrón ha intentado lactar a la menor sin evidenciar un resultado negativo de la prueba de dopaje ni indicar los medicamentos que le recetaron en el hospital psiquiátrico. Expresó que la falta de comprensión y comunicación efectiva por parte de la apelada provocó un ambiente negativo, estresante y preocupante respecto a la salud y seguridad de su hija recién nacida. Por ello, solicitó la custodia y patria potestad de la menor, que se autorice las relaciones filiales de la señora Vázquez Cintrón y que la apelada se practique pruebas de dopaje cada dos (2) meses, así como cualquier otro pronunciamiento conforme a derecho.

Tras varias incidencias procesales que no ameritan pormenorizarse, el 20 de abril de 2023, la señora Vázquez Cintrón presentó una *Contestación a moción sobre custodia, relaciones filiales o patria potestad.*[3] Mediante esta, arguyó que, al momento del nacimiento de la menor, atravesó una depresión. Además, subrayó que, desde el 14 de febrero de 2023, se le otorgó la custodia física de

---

[2] *Íd.*, Anejo 4, en las págs. 11-18.
[3] *Íd.*, Anejo 6, en las págs. 20-21.

la menor, suple sus necesidades, le brinda protección, la lleva a recibir atención pediátrica y mantiene al día todos sus asuntos. Manifestó que el señor Marrero Rolón conserva las relaciones paternofiliales con la menor. Por otra parte, reconvino a los fines de reconocer jurídicamente la custodia de su hija, en vista de que la lacta.

Por su parte, el 5 de junio de 2023, el apelante contestó la reconvención.[4] En esta, discutió que, a pesar de que le entregó la custodia de su hija a la señora Vázquez Cintrón, tenía su custodia provisional en vista de que el Departamento de la Familia solicitó la remoción y custodia de emergencia de la menor en el caso AR2023MM0015 sobre maltrato. En respuesta a la solicitud de custodia de la apelada, el apelante se opuso dado que, a su entender, la menor estaba en peligro por la falta de capacidad de la señora Vázquez Cintrón. En igual fecha, el señor Marrero Rolón presentó una *Moción* para solicitar la custodia monoparental de su hija y el relevo de la pensión alimentaria fijada el 10 de mayo de 2023 por el Examinador de Pensiones Alimentarias, debido a que posee la custodia provisional de la menor desde el 22 de mayo de 2023.[5]

El 11 de julio de 2023, la señora Vázquez Cintrón solicitó desestimar la solicitud del apelante dado que el Departamento de la Familia instó una acción de custodia de la menor en otra sala del tribunal y dicha agencia posee la custodia provisional de su hija.

El 8 de agosto de 2023, el TPI emitió una *Resolución* en la que dejó sin efecto la pensión alimentaria fijada al señor Marrero Rolón y ordenó que se le notificara la determinación de la vista de ratificación de custodia en el caso entablado por el Departamento de la Familia.[6]

El 27 de septiembre de 2023, el apelante presentó una *Moción reiterando solicitud de custodia.*[7] Indicó que solicitó la custodia

---

[4] *Íd.*, Anejo 8, en las págs. 23-24.
[5] Apéndice de *Apelación*, Anejo 9, en las págs. 25-27.
[6] *Íd.*, Anejo 11, en la pág. 30. Archivada y notificada en autos el 11 de agosto de 2023.
[7] *Íd.*, Anejo 12, en las págs. 31-32.

monoparental de modo independiente a la custodia provisional concedida en el caso promovido por el Departamento de la Familia. Además, solicitó continuar con el caso y ordenar a la Unidad de Relaciones de Familia a realizar un estudio social.

El 3 de octubre de 2023, el TPI emitió una *Sentencia* en la que aseveró que tomó conocimiento judicial que en el caso AR2023MM00015, el TPI ratificó la remoción de la custodia de la menor.[8] Por ello, resolvió que procedía el archivo del caso por falta de jurisdicción dado que el señor Marrero Rolón podía solicitar intervención en dicho caso promovido por el Departamento de la Familia para establecer su reclamo de custodia permanente.

Insatisfecho, el 20 de octubre de 2023, el apelante presentó una *Moción de reconsideración.* Planteó que, en el caso promovido por el Departamento de la Familia, la prioridad del TPI era la reunificación familiar de la menor con su madre, pero no así su reclamo de custodia permanente. Por cuanto, solicitó que el TPI dirima sobre la custodia de su hija en un caso separado. Sin embargo, en igual fecha, el Foro Primario emitió una *Resolución* en la que declaró No Ha Lugar a la reconsideración.[9]

No conforme con la determinación del TPI, el 21 de noviembre de 2023, el señor Marrero Rolón acudió ante nos mediante el presente recurso de apelación y le atribuyó al TPI la comisión del siguiente error:

> ERRÓ EL TPI, SALA DE ARECIBO AL DECLARARSE SIN JURISDICCIÓN Y ARCHIVAR EL PLEITO DE CUSTODIA AL [AMPARO] DEL C[Ó]DIGO CIVIL ENTRE PARTE[S] PRIVADAS, REMITIENDO AL APELANTE A UN PLEITO DE MALTRATO DE MENORES DONDE ÉSTE NO ES PARTE NI LE HAN PERMITIDO INTERVENIR.

En esencia, el apelante nos solicitó revocar la *Sentencia* emitida en el TPI y ordenar al Foro Primario a continuar con los procedimientos judiciales. Nos planteó que la finalidad del caso promovido por el

---

[8] *Íd.*, Anejo 1, págs. 1-3. Archivada y notificada en autos el 5 de octubre de 2023.
[9] *Íd.*, Anejo 3, págs. 9-10. Archivada y notificada en autos el 24 de octubre de 2023.

Departamento de la Familia es la prevención y preservación de la unidad familiar y proveerle servicios a la madre para mejorar sus destrezas de crianza, no la ventilación de un caso de custodia permanente. Por otro lado, arguyó que no se le permitió la intervención en dicho caso, sino que el Departamento de la Familia lo utilizó como un recurso familiar para tener la custodia provisional de la menor y que entendió que era final con la sentencia de ratificación de custodia. Por ello, puntualizó que la acción que motivó este recurso radicó en una demanda ordinaria de custodia y patria potestad, que no está relacionada al maltrato ni a la remoción de la menor. Especificó que el TPI debe ordenar la correspondiente investigación en la Oficina de Relaciones de Familia, permitir el descubrimiento de prueba correspondiente y aquilatar prueba para determinar cuál progenitor puede proteger el mejor interés de la menor.

Tomamos conocimiento judicial de la Sentencia emitida el 6 de febrero de 2024 por esta Curia mediante el recurso KLCE202400099. En virtud del referido dictamen, un panel hermano revocó la determinación del TPI en denegar la solicitud de intervención del señor Marrero Rolón para intervenir en el caso promovido por el Departamento de la Familia. En consecuencia, esta Curia autorizó la intervención del apelante, a tenor con el mejor interés de la menor.

En su comparecencia, la señora Vázquez Cintrón adujo que tanto el caso de marras como el promovido por el Departamento de la Familia versan sobre la custodia de la menor. Arguyó que dado que el Departamento de la Familia ostenta la custodia provisional de la menor, este caso resulta académico, por lo que cualquier sentencia dictada constituirá una opinión consultiva.

Con el beneficio de la comparecencia de ambas partes, exponemos la normativa jurídica atinente a este recurso.

-II-

-A-

Las controversias relacionadas al bienestar de un menor están revestidas del más alto interés público. *Pueblo en interés de los menores RPS, MPS y CJNS*, 134 DPR 123 (1993). Pues, en Puerto Rico existe una clara política pública de velar por el bienestar y los mejores intereses de los menores de edad. *Pena v. Pena*, 152 DPR 820, (2000); *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976); R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, Vol. II, San Juan, Programa de EJC de la Universidad Interamericana de Puerto Rico, 2002, pág. 1310. En este sentido, "el Estado tiene un deber de *parens patriae* que en ocasiones es superior a los derechos de patria potestad, custodia y relaciones filiales que los padres tienen sobre sus hijos menores de edad". *Depto. Familia v. Cacho González*, 188 DPR 773, 787 (2013) (Hernández Denton, opinión de conformidad). Por otro lado, "el poder de *parens patriae* limita los derechos de otras partes, a fin de salvaguardar el bienestar de los menores de edad, quienes no pueden abogar por los suyos. Es la función social y legal que el Estado asume y ejerce, en cumplimiento de su deber de brindar protección a los sectores más débiles de la sociedad". *Ortiz v. Meléndez*, 164 DPR 16, 27-28 (2005). Así que, cualquier pleito en el que disputan intereses ajenos y de un menor, el tribunal resolverá a favor del menor. *Íd.*, en la pág. 28.

Por todo ello, las decisiones sobre la custodia y patria potestad de un menor deben determinarse tras un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso, con el único propósito de velar por el mejor interés del menor de edad. *Íd.*, en las págs. 26-27; *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985); *Marrero Reyes v. García Ramírez, supra*; R. Serrano Geyls, *op. cit.*, en la pág. 1326.

-B-

En su poder de *parens patriae*, el Estado tiene la autoridad de proteger a los menores de edad cuando se convierten en víctimas de maltrato. *Depto. Familia v. Cacho González, supra*, (Hernández Denton, opinión de conformidad); *Rivera Báez, ex parte*, 170 DPR 678, 697 (2007). "Cónsono con ello, a través de los años se han adoptado varios estatutos cuyo norte es asegurar la seguridad y el mejor bienestar de los menores y facilitar la intervención del Estado en casos de maltrato". *Depto. Familia v. Cacho González, supra*, (Hernández Denton, opinión de conformidad).

Al respecto, la Asamblea Legislativa creó la *Ley para prevención del maltrato, preservación de la unidad familiar y para la seguridad, bienestar y protección de los menores*, Ley Núm. 57-2023, 8 LPRA sec. 1641 *et seq.* (Ley Núm. 57), la cual derogó la Ley Núm. 246-2011, conocida como la *Ley para la seguridad, bienestar y protección de menores*. En la exposición de motivos de la aludida Ley Núm. 57 se dispone:

> [L]a remoción de un menor de edad de su hogar e inserción en el sistema de cuidado sustituto como primera alternativa para atajar una situación que atente contra su seguridad puede causarle un trauma adicional. Es por lo que el Gobierno no puede esperar a que un menor sea víctima de maltrato o negligencia para intervenir y tratar de remediar la situación. Por ende, la mejor política requiere que el enfoque, como primera alternativa, sea la prevención del maltrato y negligencia, así como la preservación de la unidad familiar por medio de una intervención temprana con familias donde exista un riesgo de esta índole para el menor, y por medio de la provisión de servicios a estos de consejería, tratamiento, educación, entre otros, que sean basados en evidencia e informados en trauma. Lo anterior es factible siempre y cuando la permanencia del menor con su familia garantice su seguridad y mejor bienestar.
>
> Este enfoque en la intervención temprana y en la preservación de la familia, cuenta con el aval de la comunidad científica y de expertos en asuntos de salud mental y desarrollo humano. Separar a los niños de sus familias representa un evento traumático y puede tener efectos negativos duraderos. [...]

A tenor con lo anterior, dicho estatuto dispuso un procedimiento al Departamento de la Familia, con el enfoque de brindar unos planes de servicios, preservación o seguridad y permanencia para asegurar la protección, seguridad y el bienestar del menor de edad. *Íd.*, secs. 1664, 1665, 1669. Este estatuto está orientado a la realización de esfuerzos razonables para promover la reunificación familiar con la familia que se removió. Empero, cuando tal reunificación familiar no resultará en el mejor bienestar, salud y seguridad para el menor, el Departamento de la Familia iniciará un procedimiento de privación de custodia o patria potestad, sin necesidad de radicar un caso judicial separado. *Íd.*, secs. 1698, 1712. Véase *Depto. Familia v. Cacho González, supra,* en la pág. 789 (Hernández Denton, opinión de conformidad). Una vez el tribunal determine que procede remover al menor del hogar donde se removió, dicho estatuto provee para que el Departamento de la Familia desarrolle un plan de permanencia que puede incluir la reunificación familiar, la terminación de la patria potestad para que el menor sea adoptado, la ubicación permanente del menor con un recurso familiar, entre otros remedios en aras de promover el mejor bienestar para el menor de edad. Artículo 3 de la Ley Núm. 57, *supra,* sec. 1643 Artículo 17 de la Ley Núm. 57, *supra,* sec. 1669; *Rivera Báez, ex parte, supra,* en la pág. 701.

Por otro lado, cuando se radica una demanda ordinaria de custodia en la que se alegue maltrato, el Artículo 26 de la Ley Núm. 57, *supra,* sec. 1692, estableció lo siguiente:

> En los casos donde se presenten alegaciones de maltrato bajo una demanda ordinaria de custodia, el tribunal celebrará, dentro de un plazo no mayor de quince (15) días contados a partir de la fecha de radicación de la contestación a la demanda, o demanda enmendada, una vista para determinar si procede ordenar alguna medida provisional de las establecidas en el presente capítulo, luego de evaluar la prueba del alegado maltrato. Si la medida provisional tomada por el tribunal ordena la remoción de un menor y la entrega de la custodia provisional de emergencia al Estado, por conducto del Departamento de la Familia, el caso dejará de ser un pleito ordinario de custodia y se convertirá en

un procedimiento de protección a menores a tenor con las disposiciones de esta ley y será remitido para su atención a la sala especializada y con competencia para dichos casos. Una vez atendido y resuelto el caso de protección a menores por la sala especializada del tribunal, nada impedirá que se puedan continuar con los demás asuntos ordinarios de custodia en la Sala de Relaciones de Familia del Tribunal.

En ninguna circunstancia se entenderá de manera restrictiva que las alegaciones sobre maltrato o negligencia contra un menor se limitan exclusivamente a las presentadas mediante las alegaciones iniciales. En cualquier etapa del proceso judicial de custodia podrán presentarse alegaciones ante cualquier situación de maltrato o negligencia contra un menor. Como parte de las disposiciones contenidas en este Artículo, el tribunal, mediante citación, podrá requerir la participación del Departamento de la Familia y del Procurador de Asuntos de Familia a la vista. Además, se requerirá la presentación de un informe del Trabajador Social, similar al que se presenta en una vista de custodia de emergencia o un documento debidamente juramentado, sobre el alegado maltrato o negligencia a ser utilizado por el foro judicial en su proceso evaluación con relación a los procedimientos ante su consideración.

En un caso análogo, en *Estrella, Monge, v. Figueroa Guerra*, 170 DPR 644 (2007), el máximo foro judicial determinó que se le debía otorgar preeminencia a la ley de maltrato de menores sobre la ley de adopción. Pues, aunque ambos estatutos tienen el objetivo de velar por el mejor bienestar de los menores de edad, recorren senderos distintos: "una pretende fomentar en lo posible la reunificación familiar en casos de maltrato, mientras que la otra persigue romper con los lazos biológicos en aras del menor bienestar del menor". *Íd.*, en la pág. 672. Por ello, el Tribunal Supremo resolvió que se debía desestimar sin perjuicio la demanda de adopción, en lo que se concluía los esfuerzos razonables requeridos por la ley de maltrato, en aras de evitar un fracaso a la política pública en favor de la reunificación familiar. De forma similar se resolvió en *Rivera Báez, ex parte*, caso en el que el Tribunal Supremo desestimó la demanda sobre custodia y adopción radicada por unos abuelos. El Tribunal determinó que primero se debía culminar el procedimiento de maltrato para comenzar un caso de adopción, con el objetivo de que se salvaguarde la facultad del

Departamento de la Familia en decidir cuándo la adopción es la opción adecuada para un menor de edad bajo su custodia. De esta forma, se evitó que las personas que incoaron un procedimiento separado soslayaran el procedimiento dispuesto para el Departamento de la Familia e impidan que dicha agencia ejerza su autoridad como custodio y tutor del menor de edad en cuestión. *Íd.*, en las págs. 714-715. Más importante aún, el Tribunal determinó:

> **[No] podemos olvidar que la decisión final en todo proceso en el cual el Estado remueve a un menor de su hogar debe ser producto de un análisis ponderado que tome en cuenta los intereses del menor y los recursos disponibles para su cuidado. Si elaboramos un sistema en el que cualquier parte interesada puede presentar sucesivas peticiones de adopción y custodia como si este proceso fuese una especie de subasta que se adjudica al mejor postor, estaríamos socavando los propósitos de la Ley [...] sobre maltrato de menores, estatuto que busca proteger los intereses del menor y asegurar que se adopte el plan de permanencia más apropiado para éste.** *Íd.*, en la pág. 715. (Énfasis nuestro).

-III-

En el caso de marras, el señor Marrero Rolón nos expuso que el TPI cometió un error al declararse sin jurisdicción y archivar la demanda ordinaria de custodia dado que en el caso de maltrato promovido por el Departamento de la Familia no se le ha permitido ser parte ni intervenir para reclamar la custodia de su hija. En esencia, el apelante nos peticionó restituir una demanda ordinaria de custodia de su hija, la cual fue incoada ante unas alegaciones de maltrato presuntamente incurridas por la señora Vázquez Cintrón, para que dicho procedimiento judicial transcurra de forma simultánea al caso incoado por el Departamento de la Familia.

Tras un análisis objetivo y cuidadoso de todas las circunstancias presentes en el caso, con el único propósito de velar por el mejor interés de la menor de edad, confirmamos la determinación del TPI. Nuestra evaluación del expediente nos lleva a concluir forzosamente que el mejor interés de la menor está protegido en el caso

incoado por el Departamento de la Familia bajo la ley de maltrato. Nótese que dicha agencia ostenta la custodia legal de la menor, el señor Marrero Rolón mantiene su custodia provisional y el TPI tiene ante sí todos los elementos necesarios para tomar una decisión que resguarde la seguridad, el bienestar y la protección de la menor de edad, por tener la intervención de ambos progenitores, el personal del Departamento de la Familia y la Procuradora de Familia en un solo procedimiento judicial. Adviértase que tomamos conocimiento judicial que un panel hermano autorizó la intervención del señor Marrero Rolón al caso incoado por el Departamento de la Familia, por lo que podrá hacer su reclamo sobre la custodia de su hija. Véase KLCE202400099. A pesar de que el procedimiento bajo el caso incoado por el Departamento de la Familia está orientado a la realización de esfuerzos razonables para promover la reunificación familiar con la apelada, si el Tribunal determina que tal reunificación familiar no resultara en el mejor bienestar, salud y seguridad para la menor, no se descarta que la agencia inicie un procedimiento de privación de custodia o patria potestad de la señora Vázquez Cintrón.

Por todo lo anterior, entrevemos prudente el archivo sin perjuicio de la demanda ordinaria sobre custodia instada por el señor Marrero Rolón.

-IV-

Por las razones antes expuestas, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones