Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| OMAR JAVIER FERNÁNDEZ GONZÁLEZ<br><br>Apelante<br><br>v.<br><br>JAILENE RIVERA ROMÁN<br><br>Apelada | KLAN202301125 | Apelación procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Sobre:<br>Custodia<br><br>Caso Número:<br>AR2021RF00302 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de octubre de 2024.

El apelante, Omar Javier Fernández González, comparece ante nos para que dejemos sin efecto la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala de Arecibo, el 6 de octubre de 2023. Mediante la misma, el foro primario adjudicó a la aquí apelada, señora Jailene Rivera Román, la custodia monoparental de los dos hijos menores de edad de las partes. Lo anterior, dentro de una demanda sobre custodia de menores promovida por el apelante.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

## I

Durante la vigencia de su unión, las partes de epígrafe procrearon dos hijos, los cuales, al presente, son menores de edad. El 9 de abril de 2021, el apelante presentó la demanda de autos. En esencia, alegó que, en comparación con la apelada, era el progenitor que más se relacionaba con los niños y afirmó que esta no aportaba económicamente a las necesidades de los menores. A su vez, adujo que la apelada no velaba por el cuido, la higiene y los estudios de

sus hijos y afirmó que, según los niños, esta, en presencia de ellos, hablaba de manera peyorativa sobre su persona. Igualmente, en su demanda, el apelante indicó que, por voz de uno de los menores, advino al conocimiento de que la apelada tenía intenciones de trasladar su residencia a los Estados Unidos, y añadió, que ambos niños le manifestaron su deseo de quedarse a vivir con él.

El apelante afirmó contar con los recursos necesarios para suplir todas las necesidades de sus hijos. Así, al amparo de todas sus alegaciones, solicitó al Tribunal de Primera Instancia que le concediera la custodia monoparental de sus hijos menores de edad, y que ordenara la celebración de una vista para la adjudicación de la custodia provisional, hasta tanto se dispusiera del asunto. Destacamos que, en su demanda, el apelante advirtió sobre la existencia de un caso independiente entre las partes sobre alimento de menores.  En cuanto a este particular, solicitó la consolidación del mismo, ello a los fines de que, dado el tiempo que alegadamente pasaba con sus hijos, la pensión establecida a favor de estos fuera ajustada.

Así las cosas, y tras ciertas incidencias, el 13 de mayo de 2021, se celebró una vista para establecer la custodia provisional y las relaciones filiales de las partes con sus hijos menores de edad. Conforme surge de la *Resolución y Orden* pertinente, los comparecientes llegaron a ciertos acuerdos sobre los términos de sus respectivos derechos y obligaciones con los niños. En lo aquí pertinente, ese mismo día, el tribunal primario ordenó a la Unidad Social de Relaciones de Familia efectuar el correspondiente estudio social sobre la custodia y relaciones filiales concerniente.

Por su parte, el 17 de junio de 2021, la apelada presentó su *Contestación a Demanda.* En la misma, negó las alegaciones en su contra, e indicó que los menores comenzaron a compartir con el apelante durante los fines de semana, desde unos meses previo a la

presentación de la demanda. Añadió, que, en ocasiones, el apelante se negaba a devolver a los menores, por lo que catalogó dicho proceder como el subterfugio bajo el cual este alegó ser el progenitor que más tiempo pasaba con los niños. A su vez, la apelada expuso que, contrario a lo aducido, era ella quien suplía todas las necesidades de los niños, incluso durante los días en los que estos estaban bajo la custodia del apelante. Igualmente, afirmó que el apelante tenía una deuda de alimentos ascendente a, aproximadamente, $9,000.00, lo que calificó como uno de los motivos para que este presentara la demanda de epígrafe.

En su alegación responsiva, la apelada afirmó que el apelante no contaba con capacidad económica suficiente para recibir la custodia monoparental de los menores. Adujo, por igual, que, era este quien indisponía a los niños en su contra y quien había inculcado en estos la idea de que ella pretendía mudarse de Puerto Rico. De este modo, y tras exponer que el apelante no contaba con las aptitudes requeridas para velar por el bienestar de sus hijos, ni para ejercer su custodia monoparental, la apelada solicitó al Tribunal de Primera Instancia que le otorgara dicho derecho y que desestimara la demanda de epígrafe.

El 18 de junio de 2021, luego de celebrada una vista sobre custodia provisional y relaciones filiales, el Tribunal de Primera Instancia notificó una *Resolución* por la cual aprobó ciertos acuerdos provisionales alcanzados por los comparecientes, ello en cuanto al ejercicio de la custodia y de la patria potestad sobre sus hijos, derechos que, según convenido y autorizado por el foro primario, las partes habrían de ejercer conjuntamente bajo ciertos parámetros. La *Resolución* aludida, expresamente hizo constar que sus términos estarían vigentes hasta que el Trabajador Social designado al caso rindiera el correspondiente informe.

El 1 de noviembre de 2021, el Trabajador Social concernido, el señor Israel Román Acevedo, sometió a la consideración del tribunal el *Informe Social Forense.* En el mismo, expuso las particularidades de todas las partes involucradas, los trámites propios al curso de la presente causa, así como las gestiones efectuadas, de conformidad con el protocolo aplicable, ello a los fines de brindar su recomendación. Específicamente, al exponer los hallazgos de su gestión, el funcionario dispuso que, de su investigación surgía que el apelante desconocía las fechas de nacimiento de los niños, su información personal, que no estuvo presente en el proceso de embarazo ni en el de nacimiento de los niños, así como que no recordaba las etapas psicomotoras de los menores. Añadió que el apelante estaba ajeno a los asuntos académicos y de salud de sus hijos, y que, este contaba con un historial de violencia doméstica. De este modo, el Trabajador Social recomendó que la custodia monoparental de los menores fuera adjudicada a la aquí apelada, recomendando que el apelante se relacionara con estos en semanas alternas, de jueves a lunes, ello a tenor con un plan particularizado.

El 7 de diciembre de 2021, la apelada presentó *Moción Estableciendo Posición con Relación al Informe Social Forense (Informe Social).* En particular, informó que, en términos generales, estaba de acuerdo con el contenido del mismo, salvo algunos aspectos no determinantes que ameritaban aclaración. Ahora bien, expresamente manifestó su desacuerdo con la extensión de las relaciones paterno filiales recomendadas por el Trabajador Social.

Por su parte, el 11 de diciembre de 2021, el apelante presentó un escrito intitulado *Impugnación Informe Social Forense.* En el pliego, expuso que el *Informe Social* suscrito por el trabajador social Román Acevedo, presentaba serios errores y deficiencias que incidían sobre el bienestar de sus hijos. En particular, detalló las

discrepancias que, a su juicio, el informe presentaba, y consignó las aclaraciones que entendió meritorias. De este modo, solicitó al tribunal primario que se le extendiera un periodo de cinco (5) días para contratar a un perito y que, hasta tanto se definiera la impugnación del *Informe Social Forense*, se mantuviera la custodia compartida a dicho momento vigente.

Según surge, luego de acontecidas múltiples incidencias entre las partes, el 18 de diciembre de 2021, el apelante notificó que la trabajadora social Carmen R. Bruselas Vázquez, habría de fungir como su perito de impugnación. El 31 de marzo de 2022, esta produjo el correspondiente informe de impugnación.

Más tarde, y ante la renuncia por razón de retiro del trabajador social Román Acevedo, el 18 de agosto de 2022, la trabajadora social Everlinda Ayala De Jesús, tras actualizar el *Informe Social* del caso, presentó su pliego a la consideración del tribunal. En el mismo, la funcionaria hizo constar el resultado de sus entrevistas con los comparecientes y los menores objeto de disputa, quienes, a dicho momento tenían once (11) y siete (7) años. Entre sus hallazgos, estableció haber corroborado los datos básicos de las partes, sin encontrar mayores cambios en los mismos. Indicó que, de su investigación surgió que los comparecientes confrontaron ciertas diferencias respecto a la asistencia de uno de los menores a un curso remedial de verano que resultó ser compulsorio para poder asistir el rezago educacional de uno de los niños. Específicamente, indicó que el apelante se negó a que el niño participara del mismo por considerarlo opcional, ello a pesar de conocer que había reprobado una materia en la escuela. A su vez, la Trabajadora Social indicó en el *Informe Social* actualizado que, de su investigación resultó que, el 6 de julio de 2022, el apelante solicitó una orden de protección en contra de la apelada y de su señor padre, abuelo materno de los menores, lo que generó un referido al Departamento

de la Familia. Sobre ello, se alegó que la apelada dejaba a los niños con su padre, quien era usuario de sustancias controladas y de alcohol. No obstante, la trabajadora social Ayala De Jesús estableció que, tras entrevistar a la trabajadora social a cargo del aludido referido, la señora Noris Pérez Torres, esta le indicó que el mismo resultó sin fundamento.

Durante los días 7, 8, 9 y 10 de noviembre de 2022, 22 de diciembre de 2022, 23 de enero de 2023, 6 y 24 de marzo de 2023, 28 y 29 de junio de 2023 y 11 de julio de 2023, se celebró el juicio en su fondo. Según surge, en apoyo a su teoría, el apelante presentó en evidencia su testimonio, así como la declaración de los siguientes testigos; señora Von Marie Rivera González, pareja del apelante; señora González de la Rosa, madre del apelante y; señora Bruselas Vázquez, trabajadora social y perito de impugnación. Por su parte, la apelada presentó como prueba a su favor su testimonio, así como el de los siguientes testigos: señor Román Acevedo, trabajador social que efectuó el *Informe Forense* original; la trabajadora social Ayala De Jesús; señor Jimmy Rivera Guadalupe, padre de la apelada; señora Luz Núñez Pérez, tutora de materias escolares de los niños y quien, en ocasiones, los cuida; señora Noris Pérez Toledo, trabajadora social del Departamento de la Familia y; señor Hermes G. Picón González, pareja de la apelada. De igual modo, ambas partes presentaron prueba documental, a saber: *Informe Social* suscrito por el trabajador social Román Acevedo del 1 de noviembre de 2021; *Informe Social* actualizado, suscrito por la trabajadora social Ayala De Jesús; *Informe Pericial* rendido por la trabajadora social Bruselas Vázquez; *curriculum vitae* de la trabajadora social Bruselas Vázquez; certificaciones de deuda actualizadas emitidas por la Administración para el Sustento de Menores (ASUMe).

Luego de evaluada toda la prueba presentada, el 6 de octubre de 2023, el Tribunal de Primera Instancia notificó la *Sentencia* aquí

apelada. Mediante la misma, estableció en sus determinaciones de hechos la metodología empleada por el trabajador social Román Acevedo para someter el *Informe Social* que presentó en cuanto al caso de autos. Al respecto, indicó que, de conformidad con el mismo, se estableció que la apelada era la progenitora que, en todo momento, visitaba y se comunicaba con la escuela de los menores. Sobre dicho particular, el tribunal hizo constar que se corroboró que el apelante no visitaba la escuela de los niños y que nunca se comunicó, ni mostró interés en comunicarse, con los maestros, quienes, en su entrevista, lo describieron como un padre ausente. El tribunal expuso que, conforme establecido por la investigación pertinente, surgía que, en el año 2013, el apelante fue referido al Departamento de la Familia por haber incurrido en conducta constitutiva de violencia doméstica en presencia de los menores, hecho que redundó en que se expidiera una orden de protección a favor de la apelada. A su vez, indicó que, de acuerdo a la intervención del funcionario, surgía que, en la residencia de la apelada, cada menor tenía su propia habitación, ajustada a sus necesidades, mientras que, en la del apelante, compartían un mismo cuarto.

El Tribunal de Primera Instancia dispuso que, de acuerdo con la prueba, previo a la presentación de la demanda de epígrafe, el apelante nunca visitó la oficina médica del pediatra de los menores, ni participó de las actividades escolares de los niños. Sobre este último aspecto, hizo constar que la investigación pertinente estableció que, tras presentar cierto rezago en una materia escolar, uno de los menores fue matriculado en un campamento de verano para reforzar la misma. No obstante, el tribunal hizo constar que el apelante optó por no procurar la participación del niño en el mismo, ello al intimar que era algo de carácter voluntario. Ahora bien, en sus determinaciones de hechos, el Tribunal de Primera Instancia

expresamente dispuso que, conforme demostrado, la participación en el referido campamento era un requisito para que el niño mejorara sus destrezas.

En sus determinaciones, el foro de instancia expuso que la pareja del apelante es quien se encarga de buscar a los menores cuando están a su cargo, toda vez que este no cuenta con licencia de conducir. Añadió que, según se estableció, previo a la presentación de la demanda de autos, los menores solo se relacionaban de viernes a domingo con el apelante. A su vez, hizo constar que entre este y la apelada, la comunicación era deficiente y que era esta quien sufragaba los gastos personales y educativos de los niños. Igualmente, el Tribunal de Primera Instancia dispuso que la pareja de la apelada cuidaba a los menores mientras esta laboraba, que el apelante dilataba la entrega de los niños y que este, pese a que le eran remitidos los recibos de los gastos de sus hijos, no contribuía con pago alguno. De igual modo, el tribunal de origen dispuso que, a tenor con la evidencia sometida ante sí, se demostró que al apelante se le impuso una pensión alimentaria en beneficio de los menores por la suma de $150.00. Al respecto, indicó que, de conformidad con una certificación de ASUMe, con fecha del 27 de junio de 2023, este adeudaba un monto de $8,597.96 por el referido concepto.

Al expresarse en torno al informe suscrito por la trabajadora social Bruselas Vázquez, ello a los fines de impugnar las apreciaciones consignadas en el *Informe Social* suscrito por el trabajador social Román Acevedo, el Tribunal de Primera Instancia dispuso que el mismo presentaba múltiples faltas. Sobre ello, indicó que presentaba errores en la mención del nombre del funcionario que redactó el informe objeto de impugnación y de la fecha en la que el mismo se sometió. Añadió que, también, presentaba

inconsistencias, ello por hacer referencia a asuntos que nunca fueron incluidos en el *Informe Social.*

A tenor con todas sus determinaciones de hechos, el tribunal sentenciador dispuso que las recomendaciones de la Unidad Social de Relaciones de Familia estaban sostenidas por la prueba desfilada. Destacó que la apelada era quien mayor tiempo pasaba con los menores y quien suplía la mayor parte de sus necesidades básicas, tanto físicas como escolares. En particular, aludió al incidente relacionado a la participación de uno de los menores en el campamento de verano requerido para reforzar la materia escolar no aprobada, y dispuso que, habiendo presentado un rezago en el aprendizaje, procurar la participación del niño, tal cual lo hizo la apelada, era la acción más prudente que el apelante debió haber ejercido. A su vez, el Juzgador también resaltó que el testimonio del perito del apelante, la trabajadora social Bruselas Vázquez, no le mereció credibilidad, ello en cuanto a explicar las inexactitudes de su informe, el cual calificó como uno "plagado"[1] de errores en datos relevantes a la consideración de su gestión. A su vez, el tribunal primario puntualizó el hecho de que el apelante tenía un historial de violencia doméstica, que la comunicación entre las partes en cuanto a asuntos relativos para sus hijos era casi inexistente, que el apelante adeudaba una suma considerable por concepto de pensión alimentaria y que no se cumplió con el criterio estatuido en el Artículo 7 de la Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, Ley 223-2011, 32 LPRA sec. 7281, respecto al propósito firme de asumir conjuntamente la responsabilidad de criar a los hijos. Así, el Tribunal de Primera Instancia concedió a la apelada la custodia monoparental de los

---

[1] Véase: Apéndice, Anejo 1, *Sentencia,* pág. 13.

menores aquí en controversia, y estableció un plan específico de relaciones paternofiliales.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 14 de diciembre de 2023, el apelante compareció ante nos mediante el presente recurso de apelación. En el mismo, formula los siguientes señalamientos:

> Erró y abusó de su discreción el TPI al eliminar la custodia compartida, a tiempo igual, que existía por más de dos años, sin existir ningún Informe Forense de la Unidad Social de Familia que analizara la custodia compartida existente entre las partes.

> Erró y abusó de su discreción el Tribunal al no incluir en las determinaciones de hecho la prueba de la dinámica de relaciones paternofiliales por los últimos dos años.

> Erró y abusó de su discreción el Tribunal al determinar que existe una deuda de sobre $8,500, conociendo que existe un proceso de revisión de pensión desde agosto de 2021 y que no se ha ajustado la deuda a causa de la custodia compartida que existió por más de 2 años.

Luego de examinar el expediente de autos, y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a resolver.

**II**

**A**

Nuestro estado de derecho reconoce que, de ordinario, el lugar más idóneo en donde pueda encontrarse un niño es en su hogar, junto a sus padres biológicos y disfrutando de su compañía. *Pérez, Ex parte v. Depto. de la Familia*, 147 DPR 556, 563 (1999); *Pueblo en interés de los menore R.P.S., et al.,* 134 DPR 123, 134 (1993). Como norma, a los padres les asiste el derecho de velar por el cuido, custodia y control de sus hijos. *James Montes v. Montes James*, 2024 TSPR 27, 213 DPR ___ (2024); *Rentas Nieves v. Betancourt Figueroa,* 201 DPR 416, 428 (2018); *Estrella, Monge v. Figueroa Guerra,* 170 DPR 644, 662 (2007); *Rivera v. Morales*, 167 DPR 280, 290 (2006). Ahora bien, en el ejercicio de dicha facultad, éstos están

llamados a desempeñarse con responsabilidad, de manera que sus actos no incidan en los interes de su prole. De este modo, aun cuando el disfrute de la guarda y tenencia de los hijos menores está protegido, lo cierto es que ello no es absoluto. Dado a que el bienestar de un menor constituye un interés apremiante en el ordenamiento, al amparo del poder de *parens patriae*, el Estado está plenamente facultado para ejecutar las medidas que estime necesarias a los fines de velar por su efectiva protección. *Estrella, Monge v. Figueroa Guerra,* supra.

La custodia se perfila como el derecho de los padres sobre la tenencia física o control de su hijo menor, cuya principal implicación es ejercer sobre este su cuidado inmediato. *Jusino González v. Norat Santiago,* 212 DPR 855, 863 (2023); Ahora bien, al disponer del referido derecho dentro del proceso de adjudicación correspondiente, el tribunal habrá de guiarse por un "análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, teniendo como único y principal objetivo el bienestar de los menores". *Rivera v. Morales*, 167 DPR 280, 293 (2006).

Por su parte, y atinente a lo que nos ocupa, la Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, Ley 223-2011, 32 LPRA sec. 3181 *et seq.,* según enmendada persigue, entre otros fines, proteger y procurar el mejor bienestar de los niños y niñas de una pareja divorciada, o de una relación consensual cuyos miembros se han separado. A su vez, el precitado estatuto, establece los criterios que deberá considerar el tribunal al momento de adjudicar el derecho de custodia. Véase, Exposición de Motivos, Ley 223-2011, *supra.* El propósito principal de esta Ley es establecer la política pública a favor de la promoción de la *custodia compartida* y corresponsabilidad sobre los hijos. 32 LPRA sec. 3181. Sobre este

particular, la Ley 223-2011, *supra,* define el concepto de custodia compartida como sigue:

> Para los propósitos de esta Ley, custodia compartida significa la obligación de ambos progenitores, padre y madre, de ejercer directa y totalmente todos los deberes y funciones que conlleva la crianza de los hijos, relacionándose con éstos el mayor tiempo posible y brindándoles la compañía y atención que se espera de un progenitor responsable.
>
> La custodia compartida no requiere que un menor tenga que pernoctar por igual espacio de tiempo en la residencia de ambos progenitores. No obstante, en el caso de que un menor solamente pernocte en el hogar de uno de los progenitores, se dará la custodia compartida si el otro progenitor se relaciona de forma amplia y en el mayor grado posible con el menor y desempeña, responsablemente, todas las funciones que como progenitor le competen y la patria protestad le impone. De ninguna manera se entenderá que la adjudicación de la custodia compartida significará la no imposición de una pensión alimentaria a favor de los menores. Tampoco significará, necesariamente, la disminución o aumento en la misma. La determinación correspondiente se hará caso a caso, dependiendo del arreglo de custodia compartida que se decrete y siempre a la luz de lo dispuesto en la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como "Ley para el Sustento de Menores".
>
> 32 LPRA sec. 3181.

Cónsono con lo anterior, el Artículo 602 del Código Civil, 31 LPRA sec. 7281, define la custodia compartida de forma análoga a lo dispuesto en la Ley 223-2011, *supra.*[2]

---

[2]El Artículo 602 del Código Civil, *supra*, reza:

> Custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.
>
> La custodia compartida no requiere que un menor pernocte el mismo tiempo en la residencia de ambos progenitores. En este caso, el tribunal puede conceder la custodia compartida de los hijos menores de edad o de hijos mayores de edad de los que comparten la patria potestad prorrogada, si el otro progenitor se relaciona de forma amplia y desempeña responsablemente todas las funciones que como progenitor le corresponden y la patria potestad le impone.
>
> 31 LPRA sec. 7281.

Ahora bien, el Artículo 7 de la Ley 223-2011, *supra,* expresamente particulariza los criterios a considerarse en la adjudicación de la custodia compartida de un menor:

1. La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2. El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3. La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4. El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5. Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6. La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7. Que la decisión no sea producto de la irreflexión o coacción.

8. Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9. Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10. Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11. Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12. La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13. Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar,

impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

14. Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.

[...].

32 LPRA sec. 3185.

Destacamos que el Artículo 604 del Código Civil, 31 LPRA sec. 7283, provee criterios similares a los antes esbozados, ello respecto la consideración en la adjudicación de custodia.[3]

Ahora bien, el Artículo 9 de la Ley 223-2011, *supra*, estatuye los indicadores que proveen para una determinación contraria a la concesión de una custodia compartida, ello por no ser de beneficio ni favorable para los menores involucrados. Específicamente reza:

La Custodia Compartida no será considerada como Beneficiosa y Favorable para los Mejores Intereses de los Menores de Edad en los siguientes casos:

---

[3] El Artículo 604 del Código Civil, *supra*, dispone;

El tribunal debe evaluar los siguientes criterios en toda determinación de custodia:

(a) la salud mental de ambos progenitores y de los hijos;
(b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;
(c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;
(d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;
(e) el historial de cada progenitor en la relación con sus hijos;
(f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;
(g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;
(h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;
(i) la razón o los motivos de los progenitores para solicitar la custodia compartida;
(j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;
(k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;
(l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y
(m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos.

31 LPRA sec. 7283.

1) Cuando uno de los progenitores manifiesta que no le interesa tener la custodia de los menores, a base de un plan de custodia compartida. Se entenderá que la renuncia es a favor del otro progenitor.

2) Si uno de los progenitores sufre de una incapacidad o deficiencia mental, según determinada por un profesional de la salud, y la misma es de naturaleza irreversible y de tal magnitud que le impide atender adecuadamente a los hijos/as y garantizar la seguridad e integridad física, mental, emocional y/o sexual de éstos.

3) Cuando los actos u omisiones de uno de los progenitores resulten perjudicial a los hijos o constituya un patrón de ejemplos corruptores.

4) Cuando uno de los progenitores o su cónyuge o compañero o compañera consensual haya sido convicto por actos constitutivos de maltrato de menores.

5) Cuando uno de los progenitores se encuentre confinado en una institución carcelaria.

6) Cuando uno de los progenitores ha sido convicto por actos constitutivos de violencia doméstica, según lo dispuesto en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.

7) Situaciones donde el padre o la madre haya cometido abuso sexual, o cualquiera de los delitos sexuales, según tipificados en el Código Penal de Puerto Rico, hacia algún menor.

8) Cuando uno de los progenitores o su cónyuge o compañero o compañera consensual, si hubiera, sea adicto a drogas ilegales o alcohol.

[…]. 32 LPRA sec. 3187.

Las recomendaciones emitidas por el trabajador social respecto al derecho de custodia, son uno de los factores que el Tribunal adjudicador debe considerar para emitir el decreto correspondiente. 32 LPRA sec. 3186. Ello así, puesto que "el Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo siempre los mejores intereses y el bienestar de los menores a la luz de todas las circunstancias existentes". *Íd.* Por otra parte, la determinación del Tribunal sobre custodia no constituirá cosa juzgada. 32 LPRA sec. 3188. Cónsono

con dicho principio, el Artículo 10 de la Ley 223-2011, *supra,* dispone:

> Cuando uno de los progenitores de un menor de edad entienda que deben darse cambios en la relación de custodia del otro progenitor existente con sus hijos para garantizar el mejor bienestar de éstos, podrá recurrir al Tribunal y presentar una solicitud a dichos efectos. En la solicitud, el progenitor deberá expresar las razones sobre las cuales fundamenta la misma. [...].

32 LPRA sec. 3188.

**B**

De otro lado, sabido es que "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada [...]". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). De ahí que las determinaciones de credibilidad que realiza el tribunal primario están revestidas de una presunción de corrección, razón por la cual, en este aspecto, gozan de un amplio margen de deferencia por parte del foro intermedio. *Dávila Nieves v. Meléndez Marín,* supra. Asimismo, como norma, un tribunal apelativo está impedido de sustituir o descartar, por sus propias apreciaciones, las determinaciones de hechos que realiza el foro sentenciador, fundamentando su proceder en un examen del expediente sometido a su escrutinio. *Íd.*

De ordinario, el Tribunal de Primera Instancia es quien está en mejor posición para aquilatar la prueba testifical que ante sí se presentare, puesto que es quien oye y observa declarar a los testigos. *Ortiz Ortiz v. Medtronic,* supra, págs. 778-779.*; Gómez Márquez et al. v. El Oriental,* supra, pág. 792; *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004). En este contexto, el juzgador de hechos goza de preeminencia al poder apreciar sus gestos, contradicciones, manierismos, dudas y vacilaciones, oportunidad

que le permite formar en su conciencia la convicción de si dicen, o no, la verdad.

Ahora bien, la normativa antes expuesta no es de carácter absoluto. Si bien el arbitrio del foro primario es respetable, sus dictámenes están sujetos a que los mismos se emitan conforme a los principios de legalidad y justicia. *Méndez v. Morales*, 142 DPR 26, 36 (1996). Al amparo de ello, el ordenamiento jurídico vigente dicta que el criterio de deferencia antes aludido cede, entre otras instancias, cuando se determina que el juzgador de hechos incurrió en pasión, prejuicio, parcialidad o error manifiesto. *Gómez Márquez et al. v. El Oriental,* supra, pág. 793.

Por otra parte, y en vista de que toda sentencia o determinación judicial está protegida por una presunción de corrección y validez, la parte que acude al auxilio del tribunal apelativo, tiene el deber de colocar a dicho foro en condiciones suficientes para que pueda conceder el remedio solicitado. *Morán v. Marti,* 165 DPR 356, 366 (2005). Por tanto, para poder atender en los méritos los argumentos de su recurso, el promovente del mismo no sólo debe discutir a cabalidad los señalamientos alegados, sino, también, acompañarlo con la prueba necesaria para demostrar el error o el abuso de discreción invocado. *Íd.* Sobre ello, el Tribunal Supremo de Puerto Rico ha dispuesto que:

> [...] cuando un peticionario señala errores dirigidos a cuestionar la apreciación de la o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba; (2) exposición estipulada o; (3) exposición narrativa.

> *Pueblo v. Pérez Delgado*, 211 DPR 654, 671 (2023).

En ausencia de alguno de los mecanismos de prueba antes indicados, los tribunales de mayor jerarquía no pueden cumplir a cabalidad la función revisora que les asiste. *Pueblo v. Pérez*

*Delgado,* supra, pág. 671. Así pues, si la parte apelante no coloca al tribunal intermedio en la posición de ponderar y adjudicar los errores señalados, procede la desestimación del recurso que atiende o la confirmación del dictamen apelado. Bajo estas circunstancias y en lo aquí pertinente, en ausencia de la transcripción de la prueba testimonial, el tribunal intermedio sólo revisará la comisión de un error de derecho cuando éste claramente se desprenda del expediente apelativo. *Santos Green v. Cruz,* 100 DPR 9, 15 (1971).

**III**

En la presente causa, el apelante aduce que el Tribunal de Primera Instancia erró al desestimar la demanda de epígrafe, y al dejar sin efecto el plan de custodia compartida vigente entre las partes, resultando, ello, en la adjudicación de la custodia monoparental de sus hijos menores a la aquí apelada. En esencia, impugna la apreciación que de la prueba efectuó el tribunal sentenciador, al indicar que este no recibió un informe en el cual se analizara el ejercicio de la custodia compartida que hasta entonces ejercieron las partes respecto a los menores. A su vez, plantea que el foro sentenciador incidió al no incluir en sus determinaciones de hechos prueba sobre la dinámica de la custodia compartida de los menores, así como al resolver que existe una deuda por concepto de alimentos a él atribuible. Habiendo examinado los referidos señalamientos, a la luz de los hechos establecidos y el derecho aplicable, confirmamos la *Sentencia* apelada.

El apelante cuestiona la apreciación que de la prueba efectuó el tribunal sentenciador. Sin embargo, no sometió ante nos copia de la transcripción de los procedimientos, de modo que nos colocara en posición tal de poder entender sobre sus planteamientos. Por tanto, en ausencia de la trascripción de la prueba oral, nuestra intervención se ciñe a atender cuestiones puramente normativas a

la luz de la evidencia expresamente contenida en el expediente apelativo que atendemos.

Conforme se desprende del dictamen apelado, los hechos probados ante el Tribunal de Primera Instancia efectivamente establecen que, en el caso de autos, no se hacen presentes los criterios normativos dispuestos para favorecer la adjudicación de una custodia compartida. La prueba sometida a nuestro haber sostiene las determinaciones de hechos establecidas por el foro primario y corrobora que, tal cual se resolvió, el bienestar de los menores en litigio está debidamente resguardado bajo la custodia monoparental de la apelada. A los fines de derrotar dicha conclusión, el apelante alega que el Tribunal de Primera Instancia no tuvo ante sí un informe actualizado que analizara la custodia compartida ejercida por las partes durante el trámite de los procedimientos. No obstante, se equivoca en su argumento. Del expediente surge que el *Informe Social* en controversia fue debidamente actualizado, contemplando, el mismo, la situación actual, tanto de los menores, como de las partes. En la gestión de actualizar las impresiones del trabajador social Román Acevedo, la trabajadora social Ayala De Jesús expresamente hizo constar que, la situación entre las partes no había sufrido mayores cambios y corroboró que los comparecientes continuaban presentando serios problemas de comunicación entre sí respecto a los intereses y necesidades de los menores. El *Informe Social* actualizado particularizó el resultado de la investigación de la Funcionaria de forma detallada, haciendo mención de las personas entrevistadas, la metodología aplicada y la información general que pudo obtener. Específicamente, en el mismo se destacó el hecho actual de que el aquí apelante, deliberadamente, se opuso a promover la participación de uno de sus hijos en un campamento de verano que propendería a atender el rezago académico de su hijo, tras

desaprobar una materia en su escuela. Ciertamente, según resuelto, tal hecho evidencia que el apelante careció en ese momento de las destrezas requeridas para discernir qué aspectos resultan convenientes para atender el mejor bienestar de su hijo. El aprovechamiento académico de un menor es fundamental para su desarrollo. Por tanto, según dispuso el tribunal de origen, haber fomentado la participación del niño en el campamento de referencia, constituía el acto más prudente y acertado que el apelante pudo haber desplegado en aras de promover el más adecuado desarrollo del aprendizaje de su hijo. Lo anterior, con independencia de que el campamento de verano fuera compulsorio, o no.

Además, mediante el *Informe Social* actualizado, el tribunal recibió información sobre la integración del apelante en todas las gestiones inherentes a los niños. Ello resultó en acreditar ante la sala sentenciadora que la apelada continúa siendo el progenitor que se encarga de todos los asuntos escolares y médicos de los menores, evidenciando, así, que el apelante continúa desatendiendo sus obligaciones primarias respecto a las necesidades básicas de estos. En cuanto al asunto de las citas médicas de los menores, entendemos menester destacar que, ante el Tribunal de Primera Instancia, se estableció que, previo a la presentación de la demanda, el apelante nunca acudió a las citas médicas con el pediatra de sus hijos. Ello, unido al hecho de que nada en la prueba contradice las afirmaciones que los funcionarios concernidos al caso sostuvieron en sus respectivos informes sobre este aspecto, nos lleva a reafirmar que el apelante no es el progenitor idóneo para manejar las responsabilidades inherentes a ostentar la custodia inmediata de sus hijos.

De otra parte, en su recurso, el apelante planteó que el tribunal primario erró al no efectuar determinaciones de hechos relacionadas a la dinámica de las relaciones paternofiliales ejercidas

en los últimos años. Sin embargo, en cuanto a este aspecto, nada podemos imponer sobre lo resuelto. Pese a las múltiples oportunidades que le fueron extendidas por este Foro para actuar de conformidad, el apelante no nos puso en condiciones para evaluar su planteamiento. Este no produjo ante nos la transcripción de los procedimientos, hecho que, conforme expuesto en el derecho antes esbozado, limita nuestra intervención. Siendo así, y en ausencia de prueba que establezca la comisión de un error de derecho o de un abuso de discreción atribuible al Tribunal de Primera Instancia, resolvemos no intervenir sobre el señalamiento propuesto.

A igual conclusión llegamos en cuanto al planteamiento en virtud del cual el apelante aduce que el foro de origen incidió al resolver que tenía una deuda de $8,500.00 por concepto de pensión alimentaria. En principio, según surge, el criterio ejercido por el Tribunal de Primera Instancia se fundamentó en una certificación reciente, debidamente expedida por ASUMe. Dicho pliego dio fe de la pendencia de una deuda acumulada, a él atribuible, por la cantidad de $8,597.96. Ahora bien, nada en el expediente acredita que, a los fines de refutar el contenido de la certificación admitida en evidencia, el apelante haya presentado prueba en contrario. Siendo así y, tal cual indicado, toda vez que este tribunal no fue puesto en condiciones suficientes para ejercer su función revisora, no podemos intervenir sobre lo resuelto por el tribunal sentenciador.

Coincidimos con el Tribunal de Primera Instancia con que las particularidades del caso de autos distan del escenario idóneo contemplado por el ordenamiento jurídico para favorecer el ejercicio de la custodia compartida de los menores en controversia. Según lo antes dispuesto, el Artículo 7 de la Ley 223-2011, *supra*, esboza los criterios a considerarse a tal fin, los cuales, ciertamente, no concurren en la dinámica de la relación entre los comparecientes.

Quedó demostrado que entre estos existe un craso problema de comunicación para ponerse de acuerdo en cuanto a salvaguardar el mejor bienestar de sus hijos. Los hechos probados demuestran que, en efecto, no existe un propósito real entre los comparecientes para, conjuntamente, velar por las necesidades, intereses y crianza de sus hijos, todo de manera idónea y asertiva. Siendo de este modo, sostenemos lo resuelto en toda su extensión. La *Sentencia* apelada cumple con el deber fundamental que le asiste a los tribunales de velar por la protección de la niñez del país.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones