Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| NORBERTO RIVERA SÁEZ Y **LIZMARIE BÁEZ EMANUELLI**<br><br>EX PARTE | **TA2026AP00122** | ***APELACIÓN*** procedente del Tribunal de Primera Instancia Sala Superior de Aibonito<br><br>Caso Número: **AI2024RF00337**<br><br>Sobre: **Divorcio** |

Panel integrado por su presidente, el juez Sánchez Ramos, la Jueza Romero García y el juez Pérez Ocasio.

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de marzo de 2026.

Comparece ante nos, Lizmarie Báez Emanuelli, en adelante, Báez Emanuelli o apelante, solicitando que revisemos la *"Resolución"* notificada el 9 de diciembre de 2025 del Tribunal de Primera Instancia, Sala Superior de Aibonito, en adelante, TPI-Aibonito. En la misma, el Foro Primario estableció el arreglo de custodia entre las partes del caso, las relaciones paternofiliales y ordenó varios asuntos, incluyendo que *la apelante cumpla con el plan de servicios establecido por el Departamento de Familia*, en adelante, Departamento.

Por los fundamentos que expondremos a continuación, se *confirma*.

**I.**

Norberto Rivera Sáez, en adelante, Rivera Sáez o apelado, contrajo nupcias con Báez Emanuelli el 26 de febrero de 2010.[1] Ese mismo año, el 7 de septiembre, les nació a las partes el menor de edad Y.A.R.B.[2]

---

[1] SUMAC, Entrada Núm. 1, Anejo 3.
[2] *Íd.*, Entrada Núm. 1, Anejo 4.

Sin embargo, el 2 de septiembre de 2024, Rivera Sáez y Báez Emanuelli presentaron una *"Petición" ex parte* de divorcio ante el TPI-Aibonito, amparados en la causal de ruptura irreparable.[3] Además, ese mismo día, radicaron una moción solicitando que el Foro Primario resuelva de manera sumaria, por no existir controversia entre ambos.[4]

Mediante *"Orden"* del 3 de septiembre de 2024, el TPI-Aibonito declaró *"No Ha Lugar"* la petición de sentencia sumaria, e instruyó a las partes a informar si existe entre ellos un acuerdo para el plan de custodia compartida, previo a la vista que pautó para el 17 de septiembre de 2024.[5] Al día siguiente, las partes presentaron moción cumpliendo con lo ordenado.[6]

Luego de celebrada la vista en el día señalado, el TPI-Aibonito emitió una *"Sentencia"* el 7 de octubre de 2024 en la que decretó el divorcio entre las partes, y estableció los acuerdos de custodia compartida y pensión alimentaria, la cual fijó en dos (2) partes iguales.[7]

Luego, el 27 de diciembre de 2024, la apelante presentó una *"Moción Solicitando Custodia Monoparental y Referido ante el Examinador de Pensiones Alimentarias"*.[8] Luego de varios asuntos procesales, el 28 de marzo de 2025, Rivera Sáez se opuso a la solicitud de custodia monoparental.[9] Así, el 11 de abril de 2025, el TPI-Aibonito refirió el asunto de custodia y relaciones paternofiliales a la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal, en adelante, Unidad Social.

---

[3] SUMAC, Entrada Núm. 1.
[4] *Íd.*, Entrada Núm. 2.
[5] *Íd.*, Entrada Núm. 3.
[6] *Íd.*, Entrada Núm. 4.
[7] *Íd.*, Entrada Núm. 8.
[8] *Íd.*, Entrada Núm. 10.
[9] *Íd.*, Entrada Núm. 29.

La Examinadora de Pensiones Alimentarias que atendió este asunto fijó vista para el 15 de julio de 2025.[10] Celebrada la misma, y concluidos los asuntos presentados ante la Unidad Social, el TPI-Aibonito informó el 3 de octubre de 2025 que recibió el informe de esta.[11] En la misma, concedió a las partes un término para expresarse en cuanto al mismo.

Por su parte, la apelante presentó una *"Moción en Cumplimiento de Orden"* el 29 de octubre de 2025 en la que acogió solo algunas recomendaciones, *sin allanarse a la última.*[12] Esta última le ordenaba a cumplir con el plan de servicios del Departamento. Sostuvo que para ello el Foro Apelado no tenía jurisdicción. Por otro lado, Rivera Sáez desistió voluntariamente de impugnar el informe de la Unidad Social, y solicitó que se acogieran las recomendaciones del mismo.[13]

Así las cosas, el 9 de diciembre de 2025 el TPI-Aibonito emitió una *"Resolución"* en la que acogió todas las recomendaciones del informe de la Unidad Social y *ordenó a la apelante a cumplir con el plan de servicios establecido por el Departamento.* Por ello, ordenó el cierre del asunto en la Unidad Social.[14]

Inconforme, Báez Emanuelli solicitó al Foro Apelado que reconsiderara el dictamen, arguyendo que el Departamento no era parte en el asunto en consideración ante el TPI-Aibonito, por lo que no podía ordenarle a cumplir con el plan de servicios de la agencia. Solicitó que se reconsidere el mismo a los únicos efectos de eliminar esa disposición, puesto que el asunto ante el Departamento es uno administrativo y en curso.[15]

---

[10] SUMAC, Entrada Núm. 60.
[11] *Íd.*, Entrada Núm. 85.
[12] *Íd.*, Entrada Núm. 95.
[13] *Íd.*, Entrada Núm. 102.
[14] *Íd.*, Entrada Núm. 103.
[15] *Íd.*, Entrada Núm. 107.

El Foro Primario emitió una *"Resolución Interlocutoria"* el 7 de enero de 2026 en la que declaró la solicitud de reconsideración *"No Ha Lugar"*, y le indicó a la apelante que con relación a la orden de cumplimiento con el plan de servicios que establezca el Departamento, "el tribunal tiene la facultad para requerirlo ya que es un criterio que se utiliza al momento de evaluar la otorgación de la custodia y relaciones filiales, así como controversias posteriores".[16]

No obstante, el 6 de febrero de 2026, la apelante presentó un *"Escrito de Apelación"* en el que hizo los siguientes señalamientos de error:

**PRIMER ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL BASAR SU DETERMINACIÓN EXCLUSIVAMENTE EN EL INFORME DE LA TRABAJADORA SOCIAL EL CUAL ES PRUEBA DE REFERENCIA; NO FUE ADMITIDO EN EVIDENCIA CONFORME A DERECHO, A PESAR DE LA OPOSICIÓN DE LA PARTE APELANTE EN CUANTO A LAS RECOMENDACIONES DEL REFERIDO INFORME.

**SEGUNDO ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ACOGER LAS RECOMENDACIONES CONTENIDAS EN EL INFORME SOCIAL SIN CELEBRACIÓN DE VISTA, LO CUAL VIOLENTÓ IMPERMISIBLEMENTE EL DERECHO DEL APELANTE A UN DEBIDO PROCESO DE LEY Y A UN JUICIO JUSTO E IMPARCIAL, HABIDA CUENTA QUE DESDE EL PASADO 29 DE OCTUBRE DE 2025, SE INFORMÓ NO ESTAR DE ACUERDO CON EL CONTENIDO DEL INFORME SOCIAL FORENSE.

**TERCER ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIGNAR EN SU RESOLUCIÓN DETERMINACIONES DE HECHO NI CONCLUSIONES DE DERECHO.

**CUARTO ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR A LA PARTE APELANTE A SOMETERSE A UN PLAN DE SERVICIOS DEL DEPARTAMENTO DE LA FAMILIA, PRIVANDO A ESTA DE PODER IMPUGNAR LOS HALLAZGOS DE LA AGENCIA

---

[16] SUMAC, Entrada Núm. 108.

MEDIANTE LOS PROCEDIMIENTOS ADMINISTRATIVOS DE RIGOR, INCURRIENDO EN PREJUICIO, PARCIALIDAD Y ERROR MANIFIESTO.

El 10 de febrero de 2026 emitimos una *"Resolución"* en la que concedimos a la parte apelada a presentar su posición en cuanto al recurso en o antes del 9 de marzo de 2026. El 6 de marzo de 2026, Rivera Sáez compareció mediante *"Alegato de Apelado"*.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La *apelación* no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Es harto conocido que, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no

tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Íd.*, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 710 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación,* 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes,

el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212. Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.

*Rivera et al. v. Arcos Dorados et al.,* supra.

## B. Custodia

Los padres ostentan el derecho y la responsabilidad de rango constitucional de velar por el cuido, custodia y control de sus hijos. *James Soto v. Montes James*, 213 DPR 718, 759 (2024); *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 428 (2018); *Estrella, Monge v. Figueroa Guerra*, 170 DPR 644, 662 (2007); *Rivera v. Morales*, 167 DPR 280, 290 (2006). Como entendido general, el lugar para crecer más idóneo para un niño es en el hogar de sus padres. *Pérez, Ex parte v. Depto. de la Familia*, 147 DPR 556, 563 (1999); *Pueblo en interés de los menores R.P.S., et al.,* 134 DPR 123, 134 (1993).

La custodia es la tenencia o control físico que tiene un progenitor sobre sus hijos. *Jusino González v. Norat Santiago*, 212 DPR 855, 863 (2023). En Puerto Rico, las determinaciones sobre custodia deben guiarse por el bienestar y los mejores intereses del menor. *Id.; Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016); *Torres, Ex Parte*, 118 DPR 469, 476 (1987).

Por tal razón, un tribunal que dilucida custodia tiene autoridad para citar a todas aquellas personas que, según su criterio, puedan ayudarle a tomar la mejor decisión, en pos del interés óptimo del menor. *Peña v. Peña,* 164 DPR 949, 959 (2005). También, puede ordenar aquellas investigaciones de índole social o evaluaciones psicológicas o psiquiátricas que estime convenientes. *Jusino Gonzalez v. Norat Santiago*, supra, pág. 865; *Rentas Nieves v.*

*Betancourt Figueroa,* supra, pág. 430; *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 652.

En virtud de lo anterior, la Unidad Social de Relaciones de Familia tiene la responsabilidad de ofrecerle al juzgador asesoramiento mediante evaluaciones que le permitan, en el ejercicio de sus funciones, tomar decisiones fundadas en los casos a su consideración. *Jusino Gonzalez v. Norat Santiago*, supra, pág. 865; *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 652.

El Tribunal Supremo de Puerto Rico ha afirmado que, de conformidad con las prerrogativas que derivan del poder de *parens patriae* del Estado, el tribunal ostenta amplias facultades para ejecutar las medidas que estime necesarias, al determinar la custodia de un menor. *Jusino González v. Norat Santiago*, supra, pág. 865. Por igual, los tribunales deben guiarse principalmente por el bienestar y los mejores intereses del menor ya que éstos constituyen la piedra angular de la política pública. *Peña v. Peña*, supra, págs. 832-833; *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976). Por tanto, ante una determinación sobre custodia, los tribunales están llamados a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración. *Jusino González v. Norat Santiago*, supra, pág. 864; *Muñoz Sánchez v. Báez de Jesús,* supra, pág. 651; *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005).

A su vez, los foros judiciales están asistidos por la Unidad Social de Relaciones de Familia y Asuntos de Menores, que tiene como función principal ofrecer asesoramiento social mediante evaluaciones periciales que permitan al tribunal tomar decisiones informadas en los casos ante su consideración. *Jusino González v. Norat Santiago*, supra, pág. 865; *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 652. Estos funcionarios se rigen por un manual denominado como *Normas y Procedimientos de las Unidades*

*Sociales de Relaciones de Familia y Asuntos de Menores*. Ello así, porque al dilucidar las relaciones filiales, custodia o patria potestad de un menor, el foro judicial debe contar con la información más completa y variada que sea posible, de modo que pueda resolver acorde a su mejor bienestar. *Jusino González v. Norat Santiago*, supra, págs. 865-866.

De esta manera, cuando exista una controversia entre los progenitores en torno a las relaciones filiales de un menor, el tribunal referirá el caso a un trabajador social. Sección VII en las *Normas y Procedimiento de las Unidades de Relaciones de familia y Asuntos de Menores*, en adelante, Normas de las Unidades Sociales, de enero del año 2024. Estos referidos se pueden realizar en las siguientes circunstancias:

1. en la separación de la pareja
2. en la presentación de la demanda de divorcio por una de las partes
3. durante el proceso de divorcio
4. posterior al divorcio
5. cuando otros recursos familiares del (de la) menor soliciten la custodia, o relaciones filiales como los (las) abuelos(as), tíos(as) y otros(as) familiares
6. en casos que se solicita incapacidad y requieren un Informe Socioeconómico del (de la) alegado(a) incapaz indigente
7. cuando el Tribunal así lo determine conveniente, por entender que es en beneficio de algún menor y su familia

Sección VII (H) de las Normas de las Unidades Sociales, *supra.*

En tal escenario, el mencionado trabajador social estará encargado de realizar una evaluación y rendir un informe con recomendaciones al tribunal. *Íd*. Dicha evaluación se denomina evaluación social forense. Específicamente, la Sección VI (R) de las Normas de las Unidades Sociales, *supra*, define el concepto de evaluación social forense como sigue:

> Proceso de análisis en el cual se sigue un protocolo uniforme para que el (la) Trabajador(a) Social adiestrado(a) en casos de familia y asuntos de menores pueda brindar asesoramiento al (a la) Juez(a) en relación con la controversia referida por el Tribunal. Refleja en forma objetiva y científica la personalidad del individuo y el entorno familiar.

Culminada tal evaluación, el trabajador social debe emitir un Informe Social Forense, este último es el:

> Producto final del proceso de evaluación donde se atiende la controversia referida por el Tribunal, se ofrecen recomendaciones sobre la controversia y se destacan todas las áreas evaluadas, la fuente de datos, e integra el conocimiento teórico o razonamiento que fundamenta las recomendaciones.

> Sección VI (Z) de las Normas de las Unidades Sociales, *supra.*

En cuanto a las recomendaciones emitidas por el Trabajador Social respecto al derecho a relaciones filiales, este identificará los factores que afecten el plan y recomendará la ayuda que requiera la familia para superar sus limitaciones. Así pues, el Tribunal tendrá discreción judicial para la determinación, protegiendo siempre los mejores intereses y bienestar de los menores a la luz de todas las circunstancias existentes.

Por otro lado, la Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, Ley 223-2011, 32 LPRA sec. 3181 *et seq.,* impone estatutariamente una serie de requisitos y deberes con el fin de contribuir a que nuestros niños alcancen una vida plena, beneficiándose del derecho de vida que tienen de desarrollarse, criarse y ser amados por ambos seres que le dieron la vida". Exposición de Motivos, Ley 223-2011.

En su Artículo 7, el precitado estatuto dispone los criterios que un Tribunal deberá considerar para adjudicar custodia:

> 1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y **si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar**.

3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4) **El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.**

5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7) Que la decisión no sea producto de la irreflexión o coacción.

8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13) Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar, impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del

presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

Artículo 7 de la Ley 223-2011, supra, sec. 3185.

Por ser relevante al caso ante nos, debemos destacar que en su Artículo siguiente, el estatuto referido establece el alcance de las recomendaciones hechas por los trabajadores sociales de la Unidad Social. Así, establece que las sugerencias que emitan estos "será[n] uno de los factores a considerar por el Tribunal para hacer la determinación, pero no será el único. El Tribunal emitirá la correspondiente determinación de custodia tomando en consideración lo dispuesto en esta Ley". Artículo 8 de la Ley 223-2011, *supra*, sec. 3186. Además, lo cierto es que "el Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia", siempre que estos se alineen a los mejores intereses de los menores de edad. *Íd.*

### III.

Báez Emanuelli recurre ante esta Curia solicitando que revisemos la *"Resolución"* del TPI-Aibonito que acogió las recomendaciones del informe de la Unidad Social para los arreglos de custodia. En síntesis, aduce que la última recomendación no procedía, por no ser el Departamento parte en el asunto ante su consideración. En sus *cuatro (4) planteamientos de error*, la apelante aduce, en apretada síntesis, que el Foro Primario no tenía jurisdicción ni discreción para ordenarle que cumpla con las disposiciones de un plan de trabajo pautado por el Departamento. *No le asiste la razón.* Por su estrecho vínculo entre sí, *discutiremos los errores en conjunto.*

La apelante plantea que el TPI-Aibonito no tenía la facultad para ordenarle a que cumpliera con el plan de servicios establecido por el Departamento. Sin embargo, nada ofrece en derecho para sustentar su contención. Según reseñamos en la segunda parte de

esta Sentencia, hemos evaluado cuidadosamente los contornos de la relación simbiótica existente entre los Tribunales y las Unidades Sociales. Como vimos, estos últimos son llamados por el Foro Primario a realizar evaluaciones de campo que, por la naturaleza institucional del rol magisterial, de otra manera no podrían ser realizadas.

Los profesionales que se encargan de realizar estas evaluaciones, en este caso referente a la custodia del menor procreado entre las partes, y las recomendaciones que eventualmente surgen, no obligan al Tribunal. Sin embargo, son con frecuencia la fuente que contesta las preguntas necesarias para determinar cómo adjudicar controversias familiares de la manera más positiva para, en primera instancia, el bienestar de los menores de edad.

La orden específicamente impugnada en este recurso por la apelante surge del Informe Social producido en este caso. Así como el Foro Apelado no está obligado a acoger todas las recomendaciones de un Informe Social, tampoco se le prohíbe adoptarlos. En consonancia con el norte que dirigen estos procesos, es decir, el bienestar óptimo de los menores de edad, concluimos que ninguna de las medidas adoptadas por el TPI-Aibonito – incluyendo aquella que aquí se encuentra en controversia – obra en contra de Y.A.R.B.

Justipreciamos que, a la luz de los criterios impuestos al Foro Sentenciador por la Ley 223-2011, *supra*, para adjudicar custodia, se justifica que este le requiera a un progenitor que se encuentra en un proceso administrativo relacionado con el Departamento, que cumpla con lo que allí se le solicite. Esta actuación no es contraria a derecho, y muchísimo menos un abuso de discreción. Especialmente cuando consideramos que así hacerlo presuntamente beneficiará al menor Y.A.R.B.

**IV.**

Por los fundamentos expuestos, *confirmamos el dictamen apelado.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones